E. C. WYSONG *et al. v.* GEORGE W. WALDEN *et al.*

(No. 8689)

Submitted March 8, 1938.   Decided April 9, 1938.

124

*R. W. Morris* and *W. T. Lovins,* for plaintiffs in error.
*Lee, Blessing & Steed,* for defendants in error.

RILEY, JUDGE:

The object of this proceeding is the removal of George W. Walden, president, and S. S. McClure and J. E. Harless, members of the county board of education of Lincoln County. The petition is composed of ten counts, or specifications. A written demurrer and motion to quash the petition and notice, as well as a demurrer to each separate specification, were sustained, and the proceeding dismissed. The petitioners prosecute error.

A member of a county board of education may be removed under article 6, chapter 6, Code 1931, for various reasons, including among others, "official misconduct, malfeasance in office, * * * neglect of duty, * * *", as well as the wilful or negligent violation of any of the provisions of Code 1931, chapter 11, article 8, as amended and re-enacted by chapter 67, Acts 1933, 2d Ex. Session. *Hamrick* v. *McCutcheon*, 101 W. Va. 485, 133 S. E. 127. "Misconduct in office is any unlawful behavior by a public officer in relation to the duties of his office, wilful in character." Syllabus 2, *Kesling* v. *Moore*, 102 W. Va. 251, 135 S. E. 246. The term "neglect of duty" or the term "official misconduct", as used above, "shall include the wilful waste of public funds by any officer or officers." Code 1931, 6-6-1.

The petition containing the several specifications purports to have been executed by E. S. Wysong, D. E. Lawson, L. E. Gill, Everett Adkins, and Claude Adkins, who represent themselves to be citizens, residents, voters and taxpayers of Lincoln County. Their respective names at the end of the petition are written in typewriter, by counsel, who signed as counsel. The pleading was verified by affidavit by three of the named petitioners.

One of the grounds of the motion to quash is that the petition was signed with a typewriter and not personally. The statute (Code 1931, 6-6-7) provides that, in the case of the removal of any county officer, the charges shall be reduced to writing, and the same "may be preferred, * * * by * * * any five or more voters" of the county. Counsel, as attorneys, are officers of the court. So persons who come into court by counsel may be said to have signed the pleading themselves. Such being the case, we are of opinion that the petition, so far as the signing thereof, is sufficient. The demand in specification 6, of the petition, for the refund of moneys alleged therein to have been illegally expended, has no place in a proceeding of this nature. It is surplusage and should be stricken. The allegation does not, however, render the petition demurrable. The cases cited by counsel to support the con-

tention that the petition is multifarious apply to bills of complaint in equity.

We now come to a consideration of the several specifications. The claim is made that they are all too vague, and with the exception of Nos. 3 and 7, do not attempt to charge the violation of an existing statute. "While charges for the removal of a public officer need not be set out in the strict form of an indictment, they should be sufficiently explicit to give the defendant notice of what he is required to answer and to enable him to make due preparation to contest and disprove the particular act or acts constituting the alleged offense charged against him." Syllabus 3, *Sharps* v. *Jones,* 100 W. Va. 662, 131 S. E. 463. In accord: *Painter* v. *Heironimus,* 97 W. Va. 579, 125 S. E. 525; *Myers* v. *Nichols,* 98 W. Va. 37, 126 S. E. 351; 46 C. J., 998, Sec. 183.

Specification No. 1 charges that Dennis Roy, prior to the general election held in 1934, contributed a sum of money in excess of $600.00 to the Republican campaign fund, with a fraudulent understanding, agreement and contract that the respondents, George W. Walden, S. S. McClure and J. E. Harless, would, if elected to the board of education of Lincoln County, elect him, the said Roy, as superintendent of schools of said county; that after election and qualification, the respondents, because of, and pursuant to, the fraudulent understanding, agreement and contract before mentioned, did so elect Roy to said office. In other words, it charges a sale of office. Such a transaction is unquestionably against public policy. The right of appointment is not the property of the respondents, constituting a majority of the board. And such officers have no right to barter the office or to dispose of it. It is merely a political power entrusted to them, to be exercised, not to be sold. *Hager* v. *Catlin,* 18 Hun (N. Y.) 448. Contracts to procure appointment to office are void. Mechem's Public Offices and Officers, p. 231, sec. 351. But, say respondents, a public officer is not subject to removal for acts committed before his entry into office, citing 22 R. C. L., 560, sec. 279. Assuming,

as a general proposition, that the foregoing is a correct statement of the law (*Speed* v. *Detroit,* 98 Mich. 360, 57 N. W. 406, 39 Am. St. Rep. 555, 22 L. R. A. 842; *Campbell* v. *Police Com'rs.,* 71 N. J. L. 98, 58 Atl. 84; *Com.* v. *Shaver,* 3 Watts & S. (Pa.) 338; *Carlisle* v. *Burke,* 82 Misc. 282, 144 N. Y. S. 163), it is quite evident that the charge in the instant case does not come within such classification. The contract or agreement, while made prior to the election, was not actually completed until after the election and qualification of the respondents. At the time it was entered into, the specification charges, a sum in excess of $600.00 was put into the campaign fund by the potential appointee. Performance on the part of respondents could not have been enforced in a court of law, nor, in case of failure of the respondents to live up to its terms, could the money advanced have been recovered. *Hager* v. *Catlin, supra.* But, according to the specification, the respondents, after their election and qualification, did proceed to carry out the contract by the appointment of Roy to the office of county superintendent. If true, they acted in total disregard of their duty to the electorate. In view of the foregoing, may respondents rely upon the premise that an act prior to election cannot be relied on for removal from office?

In the case of *Matter of Guden,* 71 App. Div. 422, 75 N. Y. S. 794, affirmed 171 N. Y. 529, 64 N. E. 451, it was held that "a corrupt promise, made before election, to exercise * * * official powers in a particular way, affords a sufficient basis in law for the removal of the officer by the Governor." In that case, the court said: "It seems to me that the relation of the promise to the subsequent official tenure is so close as to make the act of entering into such a corrupt agreement affect the usefulness of the officer as clearly and directly as could any misconduct committed wholly after the official term began." It appears from the opinion of the Court of Appeals, affirming the foregoing finding, that one of the charges, in substance, alleged that the sheriff abdicated his powers and duties with respect to the appointment

of his subordinates to an irresponsible body of men called a patronage committee; that the latter furnished him a list of forty persons to be appointed, and that he appointed them. The foregoing is practically the case before us. We conclude that the allegations of the specification under consideration allege malfeasance in office, and, if proven, subject respondents to removal.

However, the alleged contract must be clearly proven, and that the appointment was made as a result thereof. The mere fact that it might be made to appear that the appointee to an office was a substantial contributor to the campaign fund of a particular party, does not raise the slightest presumption that there was a pre-election contract, such as alleged here. It has no evidentiary value. If such were the case, many of the best qualified men in a given community would be placed in a position where they would not risk acceptance of an appointment.

We are of opinion that the foregoing specification is good, and that the demurrer thereto should have been overruled.

Specification No. 2 has to do with expenses incurred in an attempt to effectuate transfer of certain teachers, after the execution of contracts for particular schools. This specification charges, in effect, that the respondents, in their official capacity, in failing to give heed to advice of the local prosecuting attorney, brought on costly litigation, in which the board lost, and that such action on respondents' part amounted to a wilful and negligent waste of public moneys. The board was not bound to rely on the prosecuting attorney for advice in the particular instance. *Lively* v. *Board of Education of Kanawha County*, 115 W. Va. 314, 175 S. E. 784; *Mollohan* v. *Cavender*, 75 W. Va. 36, 83 S. E. 78, L. R. A. 1917 D, 248, Ann. Cas. 1918 A, 499. It is recognized that the board has certain discretion in the transfer of teachers. *White* v. *Board of Education of Lincoln County*, 117 W. Va. 114, 184 S. E. 264, 103 A. L. R. 1376; *Neal* v. *Board of Education of Putnam County*, 116 W. Va. 435, 181 S. E. 541. In the syllabus of the last-mentioned case,

this Court said: "The power of a county superintendent of schools to transfer, etc., teachers under Acts, First Extraordinary Session 1933, 8-IV-10 (3), may be used only for regulation and in emergencies. Even then it must be exercised in a reasonable manner. The best interests of the schools must be intended. Arbitrary or capricious use of the power will not be permitted." An error of judgment is not such abuse as to justify removal from office. *Warren* v. *Commonwealth,* 136 Va. 573, 118 S. E. 125. Under the facts alleged, the board's actions do not constitute grounds for impeachment. The specification is accordingly disapproved.

Specification No. 3 charges the violation of paragraph 1, section 7, chapter 18, Code 1931 (a non-existent statute), in that the board paid to George W. Hauldren $38.25 out of the Elementary Teachers' Fund for services as a teacher, when said Hauldren held no teacher's certificate, nor any contract. Apparently, petitioners intended Code 1931, 18-7-15, which provides that "No person shall be employed to teach in the free schools of this State or receive for teaching any part of any free school fund who does not at the time he enters upon his duties hold a valid teacher's certificate covering the period of his employment * * * ." This specification does not allege that the board "knowingly" violated the statute. We are cognizant of the fact that among the onerus duties of a board of education is the appointment of many teachers, and that due to illness or other causes, vacancies may occur in the teaching staff of a county which, in view of the necessity of the steady maintenance of the school system of this state, may create a virtual emergency which, in the interests of the public service, may prompt a board of education to employ persons without a teacher's certificate, if otherwise qualified. If the violation of this statute were arbitrary and wilful, such action might be grounds for removal. A wide discretion resides in a board of education in the matter of appointing teachers and the mere appointment of a single teacher for a limited length of time, as the

small payment set forth in the specification would indicate in the instant case, is not such a flagrant violation of the statute as would justify the removal of the appointing officers. We are of the opinion, under all of the circumstances, that the demurrer to this specification was properly sustained.

Specification No. 4 avers that in the summer of 1935, unknown to the petitioners, the board of education advertised for bids for the furnishing of coal to schools not supplied with natural gas; that E. V. Hager was the low bidder for the furnishing of said coal; and that respondents, as members of the board, fraudulently and corruptly awarded the contract to a person other than the said Hager at a higher unit price and subsequently paid for the coal at a price higher than that submitted by said Hager, who was a responsible bidder. Generally, the awarding of contracts by a board of education resides in the sound discretion of the board. Courts should hesitate to interfere with that discretion. *Butler* v. *Printing Commissioners*, 68 W. Va. 493, 70 S. E. 119, 38 L. R. A. (N. S.) 653. Mandamus as a rule will not lie at the hands of an unsuccessful bidder to disturb this discretion. 80 A. L. R., Note 1382-1398. Where, however, the lowest bidder is responsible and, through fraud and corruption, the bid is rejected, such rejection constitutes a violation of official duties, justifying removal of the officers guilty thereof. We are of the opinion that the specification in its gravamen is good. Reference, however, should be made to the "public funds of the board of education", instead of the "public funds of the County of Lincoln." In sustaining this specification, we advance the caution that a "responsible" bidder embraces both financial and moral responsibility.

Specification No. 5 is to the effect that respondents, as a majority of the board, authorized the payment, among others, of a bill of Starr Sporting Goods Company, of Huntington, West Virginia, in the sum of $294.00, and that an order for that amount, marked "for athletic equipment", was subsequently issued to said

company. The demurrer to this specification was properly sustained. Education is a broad term. It embraces the development of both mind and body. The purchase of athletic equipment to be used by the pupils in the schools of Lincoln County certainly is not, *ipso facto,* an abuse of discretion. *A fortiori* it is not necessarily a ground for removal of the officers making the contract.

Specification No. 6 is to the effect that the respondents, in their capacity as members of the board of education, *wilfully* and *negligently* expended money, incurred obligations and indebtedness on behalf of the board, which it was unauthorized to expend and incur; that they made contracts, the performance of which, in whole or in part, involved and required the expenditure of money in excess of funds legally at the disposal of the board; and that they authorized and caused to be issued certificates, orders and other evidence of indebtedness which could not be paid out of the levy for the current fiscal year, or out of the funds against which said orders were issued. This is the gravamen of this specification. It involves the violation of subdivision 4, section 26 of chapter 67, Acts 2d. Ex. Sess. 1933, which chapter supersedes article 8 of chapter 11, Code 1931. "The underlying purpose of the statute [subdivision 4, section 26, in the instant case] is to prevent the incurring of obligations which can be met only out of funds to be realized from levies of a subsequent year." *Ireland* v. *Board of Education,* 115 W. Va. 614, 617, 177 S. E. 452. The mere inadvertent violation of a fiscal statute as to the expenditures of public moneys is not ground for removal of the officers composing the fiscal body. The forfeiture of a fiscal office for the unlawful expenditure of public moneys will not be declared unless there be a negligent *or* wilful violation. *Hamrick* v. *McCutcheon,* 101 W. Va. 485, 133 S. E. 127. Where, however, the violation of the statute is either wilful or negligent, courts should not hesitate to enforce the statute by the removal of the officers who have violated it. *Ball* v. *Toler,* 109 W. Va. 61, 153 S. E. 238. The specification is inept in

that it refers to "The New Building and Maintenance Fund". Under Code, 11-8-12, as embraced in the amendatory provisions of Chapter 69, Acts 2nd Ex. Sess. 1933, no provision is made for the allocation of funds of a board of education to a building fund. In making its levy estimate, a board of education has the duty in the allocation of funds to distinguish only between elementary and high schools. In this regard, the specification is subject to proper amendment. In all other respects it is good.

Specification No. 7 is based upon Code, 18-8-2, which provides, among other things, that an attendance officer "shall be paid monthly at such rate per diem for the time actually spent in the performance of his duties as the board shall determine." This specification clearly alleges facts showing that Isaac Plumley, one of the attendance officers, was paid in wilful disregard of the per diem basis provided for in the statute. The specification is good. Its allegations, if proved, will render the respondents liable to removal from office. The reference to the "public funds of the County of Lincoln" is subject to proper amendment.

Specification No. 8 alleges that the respondents caucussed on appointment of teachers prior to meeting and at the meeting, when the list was read, approved the same. This specification does not charge the violation of any law and, if true, is not made a ground for respondents' removal by any statute. No authority need be cited on the proposition that the legality of the official acts of bodies, such as boards of education, are judged from what is done while in the legal session, wherein each member is accorded the right to register his vote. When such opportunity is given, it must necessarily follow that the official action of such body or board could not be held invalid, nor the members thereof be removed from office if, perchance, a majority of the members thereof had previously agreed upon a course of action in the premises. No irregularity charged at the meeting. The specification must be disapproved.

Specification No. 9 charges that respondents permitted orders to be drawn, delivered and paid before there was any action of said board authorizing the drawing and payment thereof; and that after the same were drawn and paid, that the same were ratified by the respondents, constituting a majority of the board. A board of education of a school district may, like other public officers, ratify such acts by an agent or committee as it could have authorized in advance; and acts so ratified and adopted are binding upon the board. 56 C. J. 335. The specification is therefore disapproved.

Specification No. 10, in a general way, charges the illegal expenditure of money and the incurring of obligations in an unauthorized manner and for unauthorized purposes. The allegations of this specification are too general, and the demurrer was properly sustained.

The right to amend the petition is contested. In *White* v. *Gainer,* 112 W. Va. 221, 223, 164 S. E. 247, this Court held that a petition for the removal of public officers may be amended. In that case, the word "wilful" was permitted to be inserted. We think petitioners have the right to amend the petition provided, however, the amendment does not embrace entirely new matter. Of course, the incorporation of a new and separate charge could not be made by amendment.

For the foregoing reasons, we reverse the rulings of the trial court and remand this case for further proceedings not inconsistent with the principles herein contained.

*Reversed and remanded.*