325 S.E.2d 102

**Thomas GEORGE, Mrs. Mason Stephen Mayo, Mrs. Betty Jean Farmer, J.W. Walls and Kimberly Ann Thomas**

v.

**J.T. (Tom) GODBY.**

**No. 16138.**

Supreme Court of Appeals of West Virginia.

July 12, 1984.

Rehearing Denied Dec. 21, 1984.

W. Bernard Smith, Logan, for appellants.

King, Betts & Allen, Charleston, for appellee.

McHUGH, Chief Justice:

This action is before this Court upon a petition for appeal from the final order of the Circuit Court of Logan County, West Virginia. The petitioners, residents and voters of Logan County, include Thomas George, Mrs. Mason Stephen Mayo, Mrs. Betty Jean Farmer, J.W. Walls and Kimberly Ann Thomas. The respondent is J.T. (Tom) Godby. In this action, the petitioners seek to remove the respondent from his office as Assessor of Logan County. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

Subsequent to the institution of this action in the Circuit Court of Logan County, this Court by order, entered in February 1983, temporarily assigned the Honorable Arthur M. Recht to the Seventh Judicial Circuit to hear the action, the presiding judges of that circuit having disqualified themselves. Trial commenced on July 18, 1983, and ended on July 26, 1983. By order entered on September 8, 1983, Judge Recht, denying the petitioners' prayer for removal of the respondent from office, dismissed the petition.

Several issues are raised in this action concerning the propriety of removing the respondent from his office as Assessor of Logan County. Those issues include the petitioners' concerns relating to (1) various loans received by the respondent from private entities, (2) determinations by the respondent that the assessments or tax tickets of certain corporate taxpayers of Logan County were improper, (3) the competency of deputy assessors retained by the respondent, (4) the assessment of property in Logan County by the respondent at its true and actual value and (5) the actions of the respondent with respect to assessments entered upon the real and personal property books of Logan County for tax year 1982.

The record in this action is voluminous. It includes the trial testimony of many individuals and includes numerous exhibits and other documents. Considerable evidence was admitted at trial upon the issue of loans to the respondent, particularly the loan from Rich Creek Mining Company, described below, and upon the issue concerning the determinations by the respondent that the assessments or tax tickets of certain corporate taxpayers of Logan County were improper. We are of the opinion that those two issues are related and are dispositive of this appeal.

I

STATEMENT OF FACTS—THE RICH CREEK LOAN AND THE DETERMINATION OF IMPROPER ASSESSMENT

On December 14, 1979, the respondent entered into a written agreement with Rich Creek Mining Company. Pursuant to that agreement, Rich Creek loaned $10,000 to the respondent. In return, the respondent agreed to repay the loan with interest at the rate of ten percent. Certain certificates of stock of the respondent in Electronic Laboratories, Inc., and D. & G. Coal Processing, Inc., were to serve as collateral for the loan. As further collateral, the respondent was to execute a trust deed upon his farm at Godby Branch in Logan County. The loan agreement was executed on behalf of Rich Creek by Millard R. Ellis.

The respondent never repaid the Rich Creek loan. Furthermore, Larry D. Cochran, an incorporator of Rich Creek, indicated at trial that two of the items of collateral for the loan (the D. & G. Coal Processing, Inc., stock and the farm at Godby Branch) were sold by the respondent to others without prior notice to Rich Creek.

By way of correspondence in 1980 and 1982, Rich Creek demanded that Godby repay the loan. At trial, Millard R. Ellis, Larry D. Cochran and the respondent denied that the Rich Creek loan had anything to do with the fact that the respondent was

the Assessor of Logan County.[1]

In addition to their association with Rich Creek Mining Company, Millard R. Ellis and Larry D. Cochran were associated with the following companies: (1) C.C. & E. Coal Co., (2) Deerfield Mining Co., (3) Laramie Mining Company, Inc., and (4) Spring Branch Mining Co., Inc. Ellis performed accounting functions for the above companies as an employee of Cochran. Cochran had an ownership interest in the companies.

With respect to tax year 1982, property tax returns entitled "Personal Property Report By Incorporated Firms, Mines and Manufacturers" were filed with the respondent by Rich Creek Mining Company, C.C. & E. Coal Co., Deerfield Mining Co., Laramie Mining Company, Inc., and Spring Branch Mining Co., Inc. The record indicates that those returns were prepared either by J.K. Runyon, a deputy assessor in Logan County, or by Millard R. Ellis. Runyon's signature appears upon the returns of C.C. & E. Coal Co. and Deerfield Mining Co. Ellis' signature appears upon the returns of Rich Creek Mining Company, Laramie Mining Company, Inc., and Spring Branch Mining Co., Inc.

Petitioners' exhibit 11 reveals that for tax year 1982, certain Logan County personal property tax tickets for each of the above five companies contained one of the following stamped or handwritten notations: "To be Improper—J.T. Godby, Assessor," or "Improper Charge, J.T. Godby, Assessor." Petitioners' exhibit 11 indicates that those tax tickets were "impropered" as of April 1983.[2] Moreover, petitioners' exhibit 12, a list of "improper charges for the month of April, 1983," indicates that in May 1983 the respondent notified the Logan County Commission of the respondent's determination of improper assessment, concerning the above five companies.[3]

1. In 1981, the respondent obtained a $20,000 loan from Gilbert Imported Hardwoods, Inc. Robert L. McCormick, a friend of the respondent, indicated at trial that he believed the respondent did not possess the necessary credit strength to obtain a conventional bank loan. McCormick therefore aided the respondent in contacting Gilbert Imported Hardwoods, Inc., for the loan.

The respondent agreed to repay the $20,000 loan from Gilbert Imported Hardwoods, Inc., with interest at ten percent. As the record indicates, that loan was secured by a trust deed signed by the respondent. The exhibits in this action indicate that the Logan County property of the respondent described in that trust deed is the same property mentioned in the loan agreement between the respondent and Rich Creek Mining Company.

The loan from Gilbert Imported Hardwoods, Inc., was paid on behalf of the respondent by Alvis Porter and William Skibo, and the trust deed was released. Robert L. McCormick and the respondent denied at trial that the $20,000 loan had anything to do with the fact that the respondent was the Assessor of Logan County.

In June 1981, the respondent obtained a $13,487.03 loan from the First National Bank of South Charleston. The respondent agreed to repay that loan with interest at 18 percent. The First National Bank of South Charleston and its successor, the Federal Deposit Insurance Corporation, made demands upon the respondent for repayment of the loan.

The record indicates that the respondent never fully repaid the loan from the First National Bank of South Charleston. At trial, the respondent denied that the $13,487.03 loan had anything to do with the fact that the respondent was the Assessor of Logan County.

It should be noted that the trial judge determined that neither Gilbert Imported Hardwoods, Inc., nor the First National Bank of South Charleston were taxpayers in Logan County.

2. At the conclusion of the trial, the trial judge made the following determination:

The evidence clearly demonstrated that in tax year 1982-83, the respondent excused the following firms from payment of personal property taxes (Class III):
1. C.C. & E. Coal Co.—$3,477.08
2. Deerfield Mine Co.—5,691.98
3. Laramie Mining, Inc.—6,502.00
4. Rich Creek Mining Co.—6,772.82
5. Spring Branch Mining Co., Inc.—$19,453.88
Petitioners' exhibit 12 indicates that the above amounts represent "taxes per year."

3. At trial, the respondent testified as follows:
Q. But there is a tax ticket for Spring Branch Coal Company; is there not?
A. Yes, there is.
Q. And does it contain the stamp "Improper Charge, J.T. (Tom) Godby, Assessor, 4-27-83"?
A. It does.
Q. And that was prior to the May 2nd letter to the County Clerk?
A. That's right.

The respondent and others testified at trial that the tax tickets of those companies were marked improper because the personal property attributed to those companies was, in fact, owned by Chafin Coal Co.[4] Chafin Coal Co. had been assessed for that property, and the other companies had leased the property from Chafin for mining purposes. *See* respondent's exhibit 25. The record indicates that those companies never applied to the Logan County Commission for relief concerning the alleged improper assessments.

According to the evidence at trial, the respondent had, for many years, "impropered" personal property tax tickets without prior involvement of the Logan County Commission.[5] In that regard, Vernon Dingess, Sheriff and Treasurer of Logan County, testified as follows:

A. Well, the procedure has been that the Assessor comes over there and stamps them improper.

Q. Then what do you do?

A. I don't do nothing. I don't try to collect any of them.

Q. You don't collect them then?

A. No, sir.

. . . .

Q. Okay. When these tickets are stamped improper by the Assessor's office, is that all you require to not collect taxes?

A. Yes, sir.

Q. I will hand you what has been placed in evidence as Petitioner's Exhibit 11 and ask you if these are documents of your office?

A. Yes, sir.

Q. And is this the stamp notation on the document that you are referring to, improper charges, J.T. (Tom) Godby, Assessor?

A. Yes, sir.

Q. And it is that action upon which you act not to collect the taxes; is that correct?

A. Yes, sir.

During the trial, petitioner's exhibit 2, entitled "Audit Report—Logan County, West Virginia—July 1, 1981 through June 30, 1982," was admitted into evidence. That report was made by an accounting firm at the direction of the West Virginia State Tax Commissioner. The report, which describes various instances in Logan County of alleged violations of the West Virginia Code, states, in part, as follows:

W.Va.Code 11–3–27 Relief in County Court From Erroneous Assessments

Comments relating to W.Va.Code 11–3–27 are as follows:

The Sheriff is not receiving certified copies (by the County Clerk) of any corrections made by the County Court in relation to relief from erroneous assessments resulting from a clerical error or a mistake occasioned by an unintentional act.

Presently, a Tax Deputy in conjunction with an Assessor's employee prepares a list of erroneous assessments and forwards it to the County Clerk for certification. We recognize the practicality of the above procedures due to the volume of the improper assessments, however, this is not in conformity with the W.Va. Code.

---

4. The record indicates that although notations of "improper" were marked for tax year 1982 upon the Logan County personal property tax tickets of each of those five companies, "supplemental" personal property tax tickets for that year were made for Rich Creek Mining Company, Deerfield Mining Co., Laramie Mining Company, Inc., and Spring Branch Mining Co., Inc. The supplemental tax tickets related to personal property owned by those companies, rather than property owned by Chafin Coal Co.

5. During the trial, testimony was received from the Assessors of McDowell County, Nicholas County, Raleigh County, Marshall County, Braxton County, Mingo County and Summers County. The majority of those assessors indicated that, consistent with the testimony of the respondent, they had often "impropered" tax tickets prior to any involvement of their respective county commissions.

Herschel H. Rose, III, the West Virginia State Tax Commissioner, testified at trial as follows: "[M]y impression is that there are a variety of practices throughout the counties that involve probably a greater exercise of authority by assessors in the granting of exonerations than the code provides them."

We recommend the Assessor present a list of the orders of improper taxes to the County Clerk for certification who upon certification will in turn forward the certified list to the Sheriff.

Logan County's response was not received timely to permit submission in the financial statements.[6]

In spite of the above language of the audit report, the respondent indicated at trial that, by way of an "exit conference" in 1982 following the report, he was informed by representatives of the State Tax Department that, although his procedure of marking tax tickets "improper" without prior involvement of the county commission was in violation of the West Virginia Code, such procedure could be continued so long as the respondent thereafter notified the county commission of the "impropered" tax tickets. *See* trial transcript at 303. The respondent's testimony in that regard was supported by the testimony at trial of deputy assessor JoAnn Means.

As indicated above, it was subsequent to the audit report and exit conference that the tax tickets of (1) Rich Creek Mining Company, (2) C.C. & E. Coal Co., (3) Deerfield Mining Co., (4) Laramie Mining Company, Inc., and (5) Spring Branch Mining Co., Inc., were marked "improper."

Finally, it should be noted that Thomas Zamow, Assistant Prosecuting Attorney of Logan County, testified at trial that by memorandum dated July 15, 1981, he notified the respondent that the Logan County Sheriff and the respondent had violated the *West Virginia Code* with respect to the marking of tax tickets "improper." That memorandum concerned a West Virginia State Tax Department audit of Logan County conducted prior to the audit of July 1, 1981, through July 30, 1982, described above. That memorandum stated, in part, as follows:

Specifically, the West Virginia State Tax Department found that the Sheriff and Assessor violated West Virginia Code Chapter 11, Section 3–27. Specifically, the Sheriff excepted improper tax tickets that were approved only by the Assessor and not by the County Commission. The West Virginia State Tax Department ordered that the procedures prescribed by the West Virginia Code 11–3–27 for allowing relief from erroneous assessments be followed.

Therefore, the Prosecuting Attorney is required by the West Virginia State Tax Department and by the law to advise you to correct this instance of noncompliance and the Prosecutor would request that you advise him in writing as to what steps have been taken to correct this situation.

The respondent and JoAnn Means, a deputy assessor, testified at trial that they did not see the Zamow memorandum during the period in question.

## II

## DISCUSSION

### THE RICH CREEK LOAN AND THE DETERMINATION OF IMPROPER ASSESSMENT

Article six of chapter six of the *West Virginia Code* is concerned with the re-

---

**6.** Petitioner's exhibit 2 contained a letter dated January 20, 1983, from Herschel H. Rose, III, the West Virginia State Tax Commissioner, to the Prosecuting Attorney of Logan County. Referring to the audit report, that letter stated, in part, as follows:

Your attention is directed to the section on noncompliance with state statutes (pages 30 through 36) contained in this report. This section provides an account of the conditions of noncompliance disclosed by the audit.

Under the terms of *West Virginia Code* § 6–9–7, it is my duty to recommend the legal action considered proper in the premises. Pursuant to that section, I recommend that you inquire into the matter to insure that the instances of noncompliance are remedied, including, if necessary, the instituting of civil action as provided under *West Virginia Code* § 11–8–28.

I am forwarding a copy of this letter and audit to the attention of Attorney General Chauncey H. Browning, Jr. requesting that he provide your office with assistance if you require it.

*W.Va.Code*, 6–9–7 [1982], is concerned with examinations into the financial affairs of local public officers.

*W.Va.Code*, 11–8–28 [1933], is concerned with remedies relating to improper expenditures or obligations.

moval of persons from public office, and the petitioners base this action, specifically, upon *W. Va. Code*, 6–6–7 [1931]. Under that statute, a circuit court may remove a person from a county office upon "any of the grounds, or for any of the causes, for which a state officer may be removed under section five of this article or for any of the causes or on any of the grounds provided by any other statute." *W. Va. Code*, 6–6–7 [1931], provides, in part as follows:

> The court, or the judge thereof in vacation, shall, without a jury, hear the charges and all evidence offered in support thereof, or in opposition thereto, and upon satisfactory proof of the charges shall remove any such officer or person from office, and place the records, papers, and property of his office in possession of some other officer or person for safekeeping, or in the possession of the person appointed ... to fill the office temporarily.

*W. Va. Code*, 6–6–5 [1931], referred to above, provides in relevant part that "[a]ny state officer holding any elective office (except the governor, any judge, or a member of the legislature of this State) may be removed from office ... for official misconduct, malfeasance in office, incompetence, neglect of duty, or gross immorality." Furthermore, *W. Va. Code*, 6–6–1 [1931], provides, in part, as follows:

> The term "neglect of duty," or the term "official misconduct," as used in this article, shall include the willful waste of public funds by any officer or officers, or the appointment by him or them of an incompetent or disqualified person to any office or position and the retention of such person in office, or in the position to which he was appointed....

Finally, under *W. Va. Code*, 6–6–1 [1931], the term "incompetence," as used in article six, is stated to include "the wasting or misappropriation of public funds by any officer, habitual drunkenness, habitual addiction to the use of narcotic drugs, adultery, neglect of duty, or gross immorality, on the part of any officer."

In *Smith v. Godby*, 154 W.Va. 190, 174 S.E.2d 165 (1970), the petitioners, pursuant to *W. Va. Code*, 6–6–7 [1931], sought to remove the Assessor of Logan County from office. The respondent in this action was that assessor. The Circuit Court of Logan County in *Smith v. Godby* removed the assessor from office, stating, *inter alia*, that the assessor had retained incompetent employees and, further, had not complied with statutory assessment provisions. This Court, however, determining the evidence to be insufficient to justify removal, restored the assessor to his office. Syllabus points 2, 3 and 4 of that action provide as follows:

> 2. The remedy for the removal from office of a public officer is a drastic remedy and the statutory provision prescribing the grounds for removal is given strict construction.

> 3. Section 7, Article 6, Chapter 6, Code, 1931, expressly requires that to remove a person from office the charge against him must be established by satisfactory proof.

> 4. When the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is plainly wrong, such finding will be reversed and set aside by this Court upon appellate review.

In conjunction with syllabus point 3, above, this Court, in *Smith v. Godby* stated that "the evidence to sustain a removal in a proceeding to remove a public officer must be clear and convincing." 154 W.Va. at 199, 174 S.E.2d at 172.

Similarly, in *Evans v. Hutchinson*, 158 W.Va. 359, 214 S.E.2d 453 (1975), which action involved the removal from office of certain members of the Wayne County, West Virginia, Board of Education, syllabus point 9 states as follows: "To warrant removal of an official pursuant to *Code* 1931, 6–6–7, clear and convincing evidence must be adduced to meet the statutory requirement of satisfactory proof." *See also* syl. pt. 2, *Kemp v. Boyd*, 166 W.Va. 471, 275 S.E.2d 297 (1981), and syl. pt. 3, *In*

*the Matter of Boso,* 160 W.Va. 38, 231 S.E.2d 715 (1977).

Moreover, the meaning of "official misconduct, malfeasance in office," etc., has been considered by this Court in previous cases.

Syllabus point 4 of *Evans v. Hutchinson, supra,* states that "[o]fficial misconduct warranting removal from public office need not arise from or involve the precise duties enjoined upon the office held; it is, rather, any unlawful behavior relevant to the duties of the office."

This Court in *Kesling v. Moore,* 102 W.Va. 251, 135 S.E. 246 (1926), affirmed the removal from office of certain members of a school district board of education. In that action, the officers were found to be guilty of misconduct because they had a financial interest in various contracts to provide supplies and services to school properties of the district. Syllabus point 2 of that action states as follows: "Misconduct in office is any unlawful behavior by a public officer in relation to the duties of his office, wilful in character."[7] *See also* syl. pt. 3, *Daugherty v. Day,* 145 W.Va. 592, 116 S.E.2d 131 (1960).

In another West Virginia case, *Wysong v. Walden,* 120 W.Va. 122, 52 S.E.2d 392 (1938), citing syllabus point 2 of *Kesling v. Moore,* it was stated that "[t]he term 'neglect of duty' or the term 'official misconduct' ... 'shall include the wilful waste of public funds by any officer or officers.' Code 1931, 6–6–1." 120 W.Va. at 125, 52

S.E.2d at 395. *See also Painter v. Heironimus,* 97 W.Va. 579, 125 S.E. 525 (1924).

*Daugherty v. Ellis,* 142 W.Va. 340, 97 S.E.2d 33 (1956), cited in *Smith v. Godby,* involved a situation where this Court affirmed the removal from office of a county commissioner. It was determined that the commissioner was guilty of malfeasance within the meaning of article six of chapter six of the *West Virginia Code.* Specifically, the commissioner made an unauthorized sale of county livestock to certain individuals at an inordinately low price.

The definition of malfeasance was discussed in *Daugherty v. Ellis* and was said to include acts which are unlawful or wrongful. Referring to a decision from Tennessee, this Court stated as follows:

[M]alfeasance is the doing of an act which an officer had no legal right to do at all and that when an officer, through ignorance, inattention, or malice, does that which he has no legal right to do at all, or acts without any authority whatsoever, or exceeds, ignores, or abuses his powers, he is guilty of malfeasance.

142 W.Va. at 358, 97 S.E.2d at 43.

This Court also said in *Daugherty v. Ellis* that "[t]o establish malfeasance in office it is not necessary to show a specific intent to defraud, or that the act is criminal or corrupt in character." 142 W.Va. at 357–58, 97 S.E.2d at 42–43.

■ It is undisputed that during the period in question the respondent received a $10,000 loan from Rich Creek Mining Com-

---

7. The opinion of this Court in *Kesling v. Moore* states, in part, as follows:

"By official misconduct is meant any unlawful behavior in relation to the duties of his office, wilful in its character, by any officer intrusted in any manner with the administration of justice or the execution of the laws." 23 Am. & Eng.Enc.Law, (2nd ed.), 442. "Any unlawful behavior by a public officer in relation to the duties of his office, wilful in character." Black's Law Dictionary, (2nd ed.), 849. "Misconduct in office means any unlawful misbehavior in regard to the duties of an office, wilful in its character." 3 Words & Phrases, (2nd Ser.), 405, citing *State v. Blair,* 71 Ohio St. 410 [73 N.E. 514]. See also, 40 C.J. 1221, and cases cited. "The official doing of a wrongful act, or the official neglect to do an act which ought to have been done, will

constitute the offense, although there was no corrupt or malicious motive." Mechem on Public Offices and Officers, § 458. "There is a manifest distinction between a case of misconduct, resulting in loss of office only, and the charge of a legal crime, which requires proof of criminal intent before conviction, and punishment of the person or fine or imprisonment after conviction. In the latter there must be a direct charge of the criminal intent and criminal act. 'Misconduct' does not necessarily imply corruption or criminal intent. We think the legislature used the word in its more extended and liberal sense. This statute is not, strictly speaking, a penal statute, but rather remedial and protective." *State v. Leach,* 60 Me. 58, 11 Am.Rep. 172. 102 W.Va. at 257–58, 135 S.E. at 248–49.

pany, a taxpayer in Logan County. Rich Creek is not a corporation primarily in the business of lending money. Furthermore, the record indicates that not only did the respondent fail to repay the loan, he sold to others part of the collateral described in the written loan agreement. It is also undisputed that, prior to any involvement of the Logan County Commission, the respondent marked "improper" personal property tax tickets of the Logan County Sheriff's Office for Rich Creek Mining Company and for four other corporations associated with Rich Creek, i.e., C.C. & E. Coal Co., Deerfield Mining Co., Laramie Mining Company, Inc., and Spring Branch Mining Co., Inc. *See* n. 4, *supra*.

Such activity upon the part of the respondent must be viewed in light of *W. Va. Code*, 11–3–27 [1939]. That statute provides as follows:

> Any taxpayer, or the prosecuting attorney or tax commissioner upon behalf of the State, county and districts, claiming to be aggrieved by any entry in the property books of the county, including entries with respect to classification and taxability of property, resulting from a clerical error, or a mistake occasioned by an unintentional or inadvertent act as distinguished from a mistake growing out of negligence or the exercise of poor judgment, may, within one year from the time the property books are delivered to the sheriff, apply for relief to the county court [county commission] of the county in which such books are made out. Before the application is heard, the taxpayer shall give notice to the prosecuting attorney of the county, or the State shall give notice to the taxpayer, as the case may be. The application, whether by the taxpayer or the State, shall have precedence over all other business before the court [county commission]; but any order or judgment shall show that either the prosecuting attorney or the tax commissioner was present defending the interests of the State, county and districts: Provided, however, that the provisions of this section shall not be construed as giving county courts [county commissions] jurisdiction to consider any ques-

tion involving the classification or taxability of property which has been the subject matter of an appeal under the provisions of section twenty-four-a of this article; and any other such clerical error or mistake involving the classification or taxability of property, may be corrected by the county court [county commission] under the provisions of this section only when approved, in writing, by the county assessor.

> In the event it is ascertained that the applicant is entitled to relief, any excess taxes already paid shall be refunded and, if charged but not paid, the applicant shall be released from the payment of such excess. Whenever any correction is made by the county court [county commission], the clerk shall certify copies of the order to the auditor, to the sheriff and to the assessor, and in the case of real estate, the assessor shall thereupon make a correction in accordance with the order in his land book for the next year. Any such order delivered to the sheriff or other collecting officer shall restrain him from collecting so much as is erroneously charged against the taxpayer, and, if already collected, shall compel him to refund the money if such officer has not already paid it into the treasury. In either case, when indorsed by the person exonerated, it shall be sufficient voucher to entitle the officer to a credit for so much in his settlement which he is required to make. If the applicant be the State, the order certified to the sheriff shall show the correct amount of taxes due the State, county and districts and shall be sufficient to authorize collection in the same manner as for other State, county and district taxes.

According to the provisions of *W. Va. Code*, 11–3–27 [1939], the respondent was not authorized to simply alter the tax tickets of the sheriff and then notify the Logan County Commission. Under the above statute, action by the county commission should have preceded the alteration of the tax tickets.

This Court is of the opinion that the action of the respondent concerning the

"impropering" of the personal property tax tickets in question constitutes the type of "official misconduct, malfeasance in office," etc., contemplated by the removal statutes upon which the petitioners have proceeded in this action. Specifically, we hold that where a county assessor cancelled or marked "improper" certain personal property tax tickets of associated corporations, one of which corporations had made a loan to the assessor which was never repaid, and the action of the assessor in cancelling or marking the tax tickets "improper" was done without prior authorization of the county commission under *W.Va.Code*, 11–3–27 [1939], that assessor was subject to removal from office under the provisions of *W.Va.Code*, 6–6–7 [1931].

Upon the record in this action, we can justify no other conclusion but removal of the respondent from office. The action of the respondent in marking the tax tickets "improper" was wrongful and cannot be condoned. Such activity cannot be excused as *de minimis*. The evidence reveals an inappropriate mixture of the respondent's financial obligations and his violation of *W.Va.Code*, 11–3–27 [1939]. *See Kesling v. Moore, supra*. As indicated by respondent's exhibit 12 and petitioner's exhibit 35, the respondent corresponded upon county stationery with Rich Creek Mining Company and Gilbert Imported Hardwoods, Inc. (*see* n. 1, *supra*) concerning his loans from those companies.

The trial judge determined that the respondent's failure to follow the provisions of *W.Va.Code*, 11–3–27 [1939], did not constitute grounds for removal from office, absent clear and convincing evidence that the respondent's actions resulted in a "waste of public funds." Based upon the above authorities, however, waste of public funds is a factor to be considered, rather than an absolute requirement, in removal proceedings such as the proceeding now before this Court. We therefore, hold that waste of public funds is not an absolute requirement to removal of a person from office under the provisions of *W.Va.Code*, 6–6–7 [1931]; however, waste of public funds may be considered with respect to the removal of a person from office under that statute.

We recognize the concern expressed in the record that strict adherence to the provisions of *W.Va.Code*, 11–3–27 [1939], may be somewhat impractical in view of the number of taxpayers potentially seeking relief under that statute. However, the integrity of *W.Va.Code*, 11–3–27 [1939], must also be recognized, especially under the circumstances of this case where interwoven with the procedures called for under that statute were the respondent's personal, financial transactions. This Court does not find the evidence clear as to what the respondent was told in 1982 by representatives of the West Virginia State Tax Department subsequent to the written audit report for the period July 1, 1981 through June 30, 1982. With respect to Rich Creek Mining Company and its associated corporations, the respondent had all the more reason to closely follow the provisions of *W.Va.Code*, 11–3–27 [1939].

We therefore direct that, pursuant to *W.Va.Code*, 6–6–7 [1931], the respondent be removed from office.