519 S.E.2d 885

## In the Matter of TRACY C. and Ryan B.

## Nos. 25840, 25841.

Supreme Court of Appeals of West Virginia.

Submitted June 1, 1999.

Decided July 14, 1999.

---

Cheryl L. Warman, Esq., Warman & Sigwart, Morgantown, West Virginia, Attorney for Charlotte C.

Melinda Russell, Esq., Morgantown, West Virginia, Guardian Ad Litem.

Darrell V. McGraw, Jr., Esq., Attorney General, Barbara L. Baxter, Esq., Assistant Attorney General, Katherine M. Mason, Esq., Assistant Attorney General, Attorneys for Department of Health & Human Resources.

PER CURIAM:

This action is before this Court on two separate appeals. The Department of Health and Human Resources ("DHHR")

and Charlotte C.[1] jointly appeal a November 16, 1998, order of the Circuit Court of Preston County. The DHHR and Charlotte C. argue that the circuit court erred in failing to grant custody of Charlotte C.'s minor son, Ryan B., to Charlotte C., and in placing Ryan B. with Donna S., the mother of Nathan B., Ryan B.'s determined father.[2]

The guardian ad litem also appeals the circuit court's denial of the guardian's motion to join as necessary parties to this action another child who was born to Charlotte during the pendency of this matter.

After reviewing the briefs and arguments of the parties and the record from the circuit court, we reverse the circuit court and remand the case for further proceedings consistent with this opinion.

## I.

On January 5, 1995, 16–year–old Charlotte gave birth to Ryan. On the birth certificate Nathan B. was listed as the father of the child. Charlotte and Nathan were not married. At age 18, Charlotte quit school and married Wayne C., a soldier who was stationed in Texas. During this marriage, Charlotte and Wayne had one child, Tracy C. In June of 1997, Wayne went to Kuwait, and Charlotte moved to Preston County with her two children to live near Charlotte's family.

On August 27, 1997, the DHHR filed an abuse and neglect petition in the Circuit Court of Preston County. The petition alleged that Charlotte had failed to provide adequate adult supervision of her two children, Ryan B. and Tracy C. Specifically, the petition alleged that Charlotte had taken the two children to a bar so that she could make a phone call, and that while she made a phone call at a pay phone outside the bar, she left the two children unattended. During the 10–minute phone call, 2½ year old Ryan was seen pushing 8–month–old Tracy along the side of the road in a baby carriage. After leaving the telephone, Charlotte began walking up the road with the two children. A Terra Alta Police Officer observed Charlotte pushing the baby carriage, but failing to adequately supervise Ryan as he walked along the road. The petition further alleged that Charlotte failed to show adequate concern for Ryan and by her actions placed her children at risk. Finally, after being confronted with these allegations by the DHHR, and after Charlotte refused to sign a "Protection Plan,"[3] the petition was filed.

Subsequent to the filing of the petition, without a hearing, the circuit court determined that imminent danger existed to the two children and ordered that custody of the children be immediately transferred to the DHHR for foster home placement. The court also appointed a guardian ad litem to represent the children.

On September 5, 1997, a preliminary hearing was conducted and the court found probable cause that the allegations of neglect set forth in the petition were true and continued the placement of the children with DHHR.

Wayne, father of Tracy, filed for a motion for "Father's Immediate Custody" moving the court to terminate the temporary custody of Tracy with the DHHR and requested that the court place full custody with him, her father. A hearing was conducted on October 6, 1997, and an agreement was reached between the parties granting physical and legal

---

1. Consistent with our practice in cases involving sensitive facts, we identify the parties by initial only. *See In re Jeffrey R.L.*, 190 W.Va. 24, 26 n. 1, 435 S.E.2d 162, 164 n. 1 (1993).

2. It was established during the course of these proceedings that Nathan B. could not be the biological father to Ryan. The circuit court, however, found that Nathan B. was the "determined father" of Ryan. According to *W.Va.Code*, 48–4–1(h) [1997] a "Determined Father" means a person in whom paternity has been established pursuant to *W.Va.Code*, 48A–6–1 et seq. Paternity may be established under *W.Va.Code*, 48A–6–6

[1997] by "[a] written, notarized acknowledgment by both the man and woman that the man is the father of the named child," and once established as the father, the man is acknowledged as the father of the child for all purposes, including having the obligation for child support.

3. The protection plan was not made part of the record. During the disposition hearing, several of the witnesses opined that Charlotte did not sign the protection plan because of her low reading level and her inability to understand what was being asked of her by the protection plan.

custody of Tracy to her father, Wayne.[4] Charlotte was granted visitation.

On November 12, 1997, an adjudicatory hearing was conducted. Charlotte admitted that she had gone to a telephone outside of the bar on the morning of August 27, 1997 in order to make a telephone call. Charlotte testified that at no time were the children out of her sight. However, Charlotte admitted that her control and supervision of the children had been inadequate and neglectful on that date. The court accepted Charlotte's admissions and adjudged her to have neglected her children by failing to adequately supervise them when they were close to a dangerous highway.

By order dated December 1, 1997, the court terminated the temporary custody of Ryan with the DHHR and granted temporary custody to Donna S.,[5] the child's paternal grandmother, a resident of Garrett County, Maryland.

On December 19, 1997, Charlotte filed a motion for a "Post–Adjudicatory Improvement Period." The court granted the motion on February 17, 1998, and provided for a 3–month improvement period.[6]

A hearing was conducted on April 6, 1998 to review Charlotte's progress in the improvement period. Testimony was offered that Charlotte had failed to meet some of her required tasks. The court was also informed that Charlotte was pregnant with her third child and was due to deliver her baby in July of 1998. At the conclusion of the hearing the circuit court did not extend the improvement period, and the case was set for disposition.

On July 22, 1998, Charlotte gave birth to her third child, Nicholas. The guardian ad litem moved to join baby Nicholas and his father, Nicholas D. ("Nick") as necessary parties to the action. The circuit court denied this motion.

On August 6, 27, and 28, and on October 15 and 29, 1998, the circuit court conducted a continuing disposition hearing regarding Ryan. At the beginning of the hearing, the guardian ad litem renewed her motion to join, as necessary parties, baby Nicholas and his father Nick. The circuit court again denied this motion.

During the initial stages of the disposition hearing, the question of Ryan's paternity was raised. Over the objection of the guardian ad litem, the court ordered that Nathan, Ryan, and Charlotte submit to blood tests. These tests revealed that there was a zero percent possibility that Nathan was Ryan's father.

During the disposition hearing, Sharon McMillen, a licensed psychologist, was called by DHHR. Ms. McMillen testified that she believed that Ryan could safely be placed with his mother, Charlotte. Ms. McMillen also stated she had concerns about continued placement with grandmother Donna. Ms. McMillen testified that the grandmother had been very reluctant to be evaluated by Ms. McMillen. She further testified that grandmother Donna had been instructed to set up an appointment with her and had failed to do

---

**4.** Apparently Charlotte and Wayne separated during these events and have subsequently obtained a divorce from each other. The custody of Tracy has been settled and was not made part of this appeal.

**5.** It would appear from the record that Ryan's father of record, Nathan B., did not provide any financial support for Ryan since the child's birth. The circuit court found that Nathan had not taken on the role of supporting Ryan, and was therefore not a proper person to have custody. Nathan lives with his mother, Donna, in Maryland.

**6.** The conditions for the improvement period were:

  1. That temporary physical and legal custody of Ryan remain with the paternal grandmother, Donna S., pending completion of home studies to be conducted by the Garrett County, Maryland, Department of Social Services;

  2. That custody and visitation of Tracy continue as set forth in the Agreed Custody Modification Order entered October 16, 1997;

  3. That DHHR prepare and submit to the court for approval an individualized family case plan, to include but not limited to the following tasks by Charlotte C.:

    (a) obtaining a permanent, safe, and suitable residence in Preston County, West Virginia,

    (b) Securing employment;

    (c) Working toward a G.E.D.;

    (d) Attending and participating fully in counseling sessions and parenting classes; and

    (e) Participating in regular, supervised visitation with Ryan[.]

so. Also of concern to Ms. McMillen were Ryan's actions indicating that he may have acquired inappropriate sexual knowledge. Ms. McMillen opined that Ryan should be evaluated to determine if there had been sexual abuse.

The court also heard testimony from Emma Steelman, a social worker of 25 years and site director of Wellspring Family Services, an agency from which Charlotte had been receiving assistance for parental skills. Ms. Steelman believed Ryan should be placed with his mother, and that this placement would be in the best interests of the child.

Lisa Williams, a child protective worker with DHHR who had worked extensively with the parties in this case, also testified. Ms. Williams stated that it was the department's plan to reunite Charlotte with Ryan. Ms. Williams stated that Charlotte had made great strides in adhering to the goals established by DHHR. Ms. Williams also testified that it would be in Ryan's best interest to be reunited with his mother.

The court heard from Richard Kutchman, a child protective service worker for Garrett County, Maryland. Mr. Kutchman testified that the grandmother Donna had lost custody of all five of her children—partially based on physical abuse. Mr. Kutchman reported that there had been allegations of abuse in grandmother Donna's household over a 13 year period. Mr. Kutchman stated that the grandmother would not be appropriate for long term placement of a child. Mr. Kutchman testified that grandmother Donna had pled guilty to felony theft approximately 2 years prior to the disposition hearing. Finally, Mr. Kutchman also stated that Nathan B.

had been uncooperative in Mr. Kutchman's investigation.

Cheryl Dixon, a second social worker with Wellspring Family Services who had provided assistance to Charlotte, also testified. Ms. Dixon also testified that it would be in the child's best interests to be reunited with his mother.

Linda Beeler, a supervised but not licensed psychologist, was called by the guardian ad litem to testify. Ms. Beeler stated that she had been hired by Donna S. to evaluate the S. family. Ms. Beeler stated that her reports did not indicate that the family was abusive. However, Ms. Beeler admitted that there were discrepancies between what Donna had told Ms. Beeler and the actual reports of child abuse from Maryland authorities.

Finally, DHHR called Tammy Titchenell, a licensed counselor. Ms. Titchenell was requested by DHHR to evaluate Ryan for potential sexual abuse following Ms. McMillen's testimony. Ms. Titchenell stated that there was a potential sexual abuse problem and that grandmother Donna was using intimidation tactics to keep the child from fully discussing the matter. Ms. Titchenell recommended that Ryan be placed with his mother.

The DHHR submitted a case plan pursuant to *W.Va.Code*, 49–6–5(a) [1998] and recommended that Ryan be returned to Charlotte's custody while retaining legal custody in DHHR.[7] The guardian ad litem however, recommended that Ryan continue to be placed with grandmother Donna until Charlotte obtained her GED.

---

7. The DHHR case plan provided the following as a "Permanency Plan" for Ryan B.:

It is the recommendation of the West Virginia Department of Health and Human Resources that [Ryan B.] be returned to the physical custody of his mother, with the state department retaining legal custody in order to monitor the placement and that the department be granted the ability to remove the child without prior court involvement if safety issues should arise. The department would then proceed with appropriate court action. The state department further stipulates that Charlotte will continue counseling as scheduled with Sharon McMillen and that these ses-

sions will include Ryan. Charlotte will also participate in and cooperate with services provided by Wellspring. The department would also recommend that a transition period is not needed in the case, as Ryan has had continuous contact with his mother through weekly visits. If the court finds reunification is not in the best interest of [Ryan B.], the department would not recommend continued long term placement in the home of [Donna S.] due to the concerns of past abuse issues noted in the home study completed by Garrett County Office of Social Services[.]

(Emphasis in original.)

Following all of the testimony, the circuit court did not terminate the parental rights of Charlotte, but found that she was unable to adequately provide for Ryan's needs and assure his safety. Consequently, the circuit court appointed grandmother Donna as Ryan's guardian and continued physical custody of Ryan with Donna in Maryland. The circuit court also found that Nathan B. was the determined father[8] of Ryan. Following the entry of the order, both the guardian ad litem and Charlotte, joined by the DHHR, appealed.

## II.

In Syllabus Point 1 of *In re Tiffany S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), we set forth the standard of review for abuse and neglect cases:

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

The DHHR and Charlotte jointly assert that the circuit court erred in failing to award Charlotte custody of Ryan, and in placing Ryan with grandmother Donna. Both the DHHR and Charlotte contend that the circuit court ignored the weight of evidence by refusing to grant Charlotte custody of Ryan. Conversely, the guardian ad litem argues that the circuit court weighed the evidence properly and that the placement of Ryan with his paternal grandmother was reasonable given the testimony offered during the disposition hearing.

The statutes of this State and opinions of this Court have traditionally protected the parent-child relationship. We have stated that "no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person." *In re Willis*, 157 W.Va. 225, 237, 207 S.E.2d 129, 136 (1973).

In the instant case, the circuit court heard the testimony of multiple child professionals, all of whom, with the exception of Ms. Beeler and Mr. Kutchman, stated that the placement of Ryan with his mother Charlotte would be in the child's best interest or could be done safely because his mother had remedied those problems that first put Ryan in danger. Ms. Beeler was hired by Ryan's paternal grandmother, Donna, to ascertain whether the home of grandmother Donna was a suitable placement for Ryan, and did not offer an opinion on the suitability of placement of Ryan with his mother Charlotte. Mr. Kutchman, a child protective service worker from Maryland, testified that due to the history of abuse, he believed that any long term placement of a child with grandmother Donna would be inappropriate.

The court also heard testimony from child workers Ms. McMillen and Ms. Titchenell, both of whom expressed concerns with grandmother Donna. Ms. McMillen stated that Donna appeared reluctant to be interviewed and failed to make an appointment as requested. Ms. Titchenell, who evaluated Ryan interacting with both mother Charlotte and on another occasion with grandmother Donna, stated that Ryan was more of a "typical three year old with his mother than with his grandparents."[9]

---

8. *See supra*, note 2.

9. In her recommendation, Ms. Titchenell stated the following:

Ryan has definitely been traumatized by his many placements and separation from his mother. He has an attachment to his mother which was very evident during their observation session. He is comfortable enough to

The record contains a great deal of testimony indicating that the placement of the child with grandmother Donna would be inappropriate, while the mother of the child has apparently taken substantial steps to remedy any safety problems. We have stated that "when the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is plainly wrong, such finding will be reversed and set aside by this Court upon appellate review." Syllabus Point 1, in part, *George v. Godby*, 174 W.Va. 313, 325 S.E.2d 102 (1984). We have also held that "[a]s a general rule the least restrictive alternative regarding parental rights to custody of a child under *W.Va.Code*, 49–6–5 [1977] will be employed[.]" Syllabus Point 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

■ Based on our review of the record we find that the circuit court did not properly weigh the preponderance of the evidence, and the decision to place Ryan in the custody of grandmother Donna was clearly erroneous. Accordingly, we reverse the circuit court's placement of Ryan with his paternal grandmother.

While we reverse the decision of the circuit court, we are mindful that Ryan has been in the care of his grandmother for some time, and that a transition period will be necessary in returning him to his mother. *See, e.g.,* Syllabus Point 3, *James v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991); *Honaker v. Burnside*, 182 W.Va. 448, 388 S.E.2d 322 (1989). The court should address this transition on remand.

■ In the second appeal, the guardian ad litem argues that the circuit court erred by failing to join Nicholas D., the child born of Charlotte during the pendency of this matter, and his father Nick D. as necessary parties to the case.

*W.Va.Code*, 49–6–3(a) [1998] provides, in part:

[i]n a case where there is more than one child in the home, or in the temporary care, custody or control of the alleged offending parent, the petition shall so state, and notwithstanding the fact that the allegations of abuse or neglect may pertain to less than all of such children, each child in the home for whom relief is sought shall be made a party to the proceeding.

The language of this statute is clear: every child in the home "for whom relief is sought shall" be made a party. However, while each child in the care, custody or control of the alleged offending parent must be made a party, "[n]o decision to terminate parental rights could happen until the statutory requirements" are met. *In re Lacey P.*, 189 W.Va. 580, 586 n. 5, 433 S.E.2d 518, 524 n. 5 (1993).

Regarding the joining of the father, Nick, *W.Va.Code*, 29–6–19(b) [1992] provides in part that "[t]he petition and notice of the hearing shall be served upon both parents and any other custodian, giving to such parents or custodian at least ten days' notice[.]" Since Nicholas was necessary as a party under *W.Va.Code*, 49–6–3(a), his father, Nick, also needed to be joined.

Consequently, the circuit court erred in denying the guardian ad litem's motion to join baby Nicholas and father Nick as necessary parties, and on this issue we reverse.[10]

### III.

Based upon the forgoing, the judgment of the Circuit Court of Preston County is reversed with respect to the placement of Ryan

---

share information with her and to express his feelings. He did not appear to have the same type relationship with [Donna S. and her husband]. He is also attached to them, but at a different level than his mother. Their interactions are more surface and side by side existence. Ryan's behavior was more typical of a three year old when he was with his mother than with his grandparents. Some of Ryan's behaviors and verbal cues lead me to believe

his grandparents use intimidation tactics and speak poorly of his mother.

10. The guardian ad litem also assigns as error the circuit court's order requiring a paternity testing with respect to Ryan. However, as the court ruled that Nathan B. was the determined father of Ryan and granted him visitation, we find the issue moot and do not address it at this time.

with his paternal grandmother Donna. We also reverse as to the circuit court's denial of the motion to join baby Nicholas and his father, Nick, as necessary parties.

We remand this case for further proceedings consistent with this opinion. We direct the court on remand to examine the best interests of the children of Charlotte, and mandate the DHHR to develop a plan that will result in a transition of custody of Ryan back to his mother, Charlotte.

Reversed and Remanded.