No. 14595

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

IN RE THE MARRIAGE OF

STANLEY M. KNUDSON,

Petitioner and Appellant,

vs.

FRANCES ANNE KNUDSON,

Respondent-Counter-Petitioner.

---

Appeal from:   District Court of the Twelfth Judicial District,
Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellant:

Berger, Anderson,Sinclair and Murphy, Billings, Montana

For Respondent:

Marra, Wenz, Iwen & Johnson, Great Falls, Montana

---

Submitted on briefs: July 14, 1979

Decided: **JAN 30 1980**

Filed: **JAN 30 1980**

*Thomas J. Kearney*
                                    Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Stanley V. Knudson (herein designated as the husband) appeals from that portion of a dissolution of marriage decree entered by the Hill County District Court which awarded Frances Anne Knudson (herein designated as the wife) an interest in his retirement benefits to which he is entitled under the Railroad Retirement Act. The wife cross-appeals from the same judgment, contending that it was error for the trial court to award her only 40 percent of the marital estate. She also contends she is entitled to maintenance, attorney fees, and costs.

We discuss first the issue of whether the wife can claim an interest in the husband's benefits to which he is entitled under the Railroad Retirement Act. Since the appeal was filed in this case, the United States Supreme Court has ruled in Hisquierdo v. Hisquierdo (1979), 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1, that such benefits are not part of the marital estate, and cannot be considered directly or indirectly in a divorce decree which distributes the assets of the marriage. For purposes of discussing the remainder of the property distribution award, it is useful to set forth how the railroad retirement benefits were handled by the trial court.

In responding to the husband's petition for divorce and an equitable distribution of the assets of the marriage, the wife contended that his railroad retirement benefits were an asset of the marriage, and therefore she claimed an interest in them. The court found that the husband through 1976 had accumulated 275 months of employment with the railroad which would have entitled him to an annuity of $560 per month if he were eligible to retire at the end of 1976.

-2-

In the initial decree the trial court awarded the husband approximately 60 percent of the marital assets, and the remaining 40 percent was of course, awarded to the wife. But for some reason the original decree is silent as to disposition of the railroad retirement benefits.

After entry of the original decree, both parties moved to amend the findings and conclusions in several particulars. The wife at that time requested that the decree be amended to award her a portion of the husband's interest in his railroad retirement pension. The Court then arrived at a calculation of the husband's retirement benefits and distributed 40 percent of the benefits to the wife and 60 percent of the benefits to the husband. This was the same formula used by the trial court in dividing the other marital assets. At the time the court awarded railroad retirement benefits to the wife as a property interest, it had before it several state cases, including the California case of In Re Marriage of Hisquierdo (1977), 139 Cal.Rptr. 590, 19 Cal.3d 613, 566 P.2d 224, which case was then being reviewed by the United States Supreme Court.

Because of the way in which the railroad retirement benefits were treated by the trial court, it is clear to us that the trial court would not have distributed the marital estate in any different manner if the Court had known from the outset that Railroad Retirement Act benefits were not part of, and could not be considered for any purpose, as part of the marital estate and therefore subject to distribution.

As we have noted, the United States Supreme Court in Hisquierdo, supra, specifically ruled that retirement benefits receivable under the Railroad Retirement Act, 45 U.S.C.A. 231, et seq. may not be included as part of a property distribution. The Court determined that distribution of a share of one spouse's expection in retirement benefits under the Act would frustrate the purpose of the Act which is to encourage an

early retirement by employees by providing them with adequate support in their old age. The Court further noted that the antigarnishment section of the Act, section 231(m), protects not only a direct distribution of a share of a pension, but also an indirect distribution by an offsetting award, that is, an award to compensate the nonemployee spouse for retirement benefits not directly received. The Court concluded that an offset as well as a direct interest in the pension would frustrate the purpose of the Act. We note, however, that the Court was careful to add that pension benefits under the Act could still be reached for maintenance or for child support. Hisquierdo, supra.

Here, the trial court clearly awarded the wife as part of the property settlement a share in the husband's pension rights under the Railroad Retirement Act. Accordingly, that portion of the decree must be vacated. The question of whether the wife should have been awarded maintenance in lieu of a share of the railroad pension is discussed later in this opinion.

We reach now the wife's cross-appeal whereby she contends that the trial court should have awarded her 50 percent of the marital assets. She asserts two grounds. First, she contends that she asked for a 50 percent distribution in her counterpetition, that the husband did not respond to the counterpetition, and therefore he is deemed under pleading rules to have admitted she was entitled to 50 percent of the marital estate. Second, she argues that if her pleading argument should not prevail, that the distribution scheme is unfair to her.

The wife relies on Rule 7(a), and Rule 8(d) of Mont. R.Civ.P. in contending that the husband had a duty to respond to her counterpetition, and in failing to do so admitted that

-4-

the wife was entitled to 50 percent of the marital assets. She argues that because of these rules, the hands of the trial court was tied, and he was bound by law to award her 50 percent of the marital estate. To accept her argument however, would be to exalt form over substance.

The essential pleadings required under the Uniform Marriage and Divorce Act are set forth in section 40-4-103(3), MCA. The first pleading is a petition, and the responsive pleading is denominated a response. If there are other pleadings under the Act, they are specifically governed by the Montana Rules of Civil Procedure. In his petition the husband asked the trial court to equitably apportion the marital estate. In her response the wife went another step and asked that she be awarded 50 percent of the marital estate. She contends that the husband was duly bound by the rules of civil procedure to respond to her demand for fifty percent of the assets, and that his failure to do so resulted in an admission that she was so entitled. But the husband was under no duty to answer the wife's "counter-petition."

The entire marital estate was brought before the trial court by the husband's petition asking the court to equitably apportion this estate. The husband did not take a position in this petition as to precisely how he felt the estate should be divided, but the wife in her counterpetition alleged that she was entitled to half of the parties assets. A reply to this counterpetition, might have indicated to the court how close or how far away the parties were from arriving at a percentage figure for distributing the marital estate, but he had no duty to reply. The entire marital estate was before the trial court for equitable distribution. We note, furthermore,

-5-

that at the end of the trial counsel for the husband moved under Rule 15 that the pleadings be amended to conform to the proof and that the trial court granted this motion.

Nor does the Uniform Marriage and Divorce Act (section 40-4-105, MCA) require that a petition for marriage dissolution set forth how the petitioner believes the marital estate should be divided. The purpose of the petition is simply to inform the trial court that the parties' acquired property during the course of the marriage and that the court should equitably divide it in the event the parties' cannot reach an agreement in this regard. Here both sides conducted extensive discovery and there was a prolonged trial where the positions of the parties were set forth in great detail. The issue of an equitable division was clearly raised by the pleadings, and that is all that is required.

We next discuss the wife's contention that she should have been awarded 50 percent of the marital assets and a large share of the income-producing property.

The parties owned a 1,320 acre farm which they used for farming and ranching, and a 10 acre tract of land upon which barns, graineries, sheds, and a farmhouse were located. Other major assets of the parties included personal property necessary to run the farm, livestock, prospective income from grain contracts, and grain on hand. The court set the value of the farmland at $400,000, the 10 acres and associated buildings at $87,000, and the farm-related assets described above at $154,487.

At trial, the husband requested the court to keep the farm intact and to permit him to compensate the wife for her interest in the farm. The wife on the other hand, wanted a

50 percent share of the marital assets, and had no objection to the sale of the farm if it was required in order to reach her 50 percent objective.

The trial court set the net value of the marital estate at $551,000 and fixed the wife's interest at $220,000. The decree awarded to the husband the farmland, the livestock, personal property necessary to run the farm, the income to be received from grain sale contracts, and the grain on hand. The husband was ordered to assume responsibility for the parties' debts which were estimated at $90,586.

The wife was to receive her $220,000 by receiving the 10 acre tract with its associated buildings valued at $87,000, and payment of $133,000 from the husband. The amended decree ordered the husband to pay the wife $13,000 by November 1, 1978 and the balance of $120,000 in yearly installments of $6,000 each. The decree also provided that either party could seek modification of the payment schedule in the event the property was sold, and that the balance due the wife would be a lien upon the farmland.

The wife contends the trial court's property division was inequitable because she received less than 50 percent of the net marital estate, and because the husband received most of the income-producing assets.

The evidence presented by both parties at trial established that the husband spent practically the whole of his waking hours working either for the railroad or on the family farm. Uncontroverted testimony established that the husband as a general practice worked about 16 hours a day and spent anywhere from 5 to 8 hours on farm work. The forced sale of the family farm would have ended the husband's lifetime dream of developing the family farm. The parties' son has begun farming a portion of the land and he shares his father's lifetime goal.

The wife, on the other hand, does not care for farming, and has opposed the investment of the family's income in farm machinery and other farm materials. Although the wife helped in clearing the land of rocks and performed other farm chores, she has not displayed the single-minded devotion to the farm that the husband possesses. The bulk of the parties' assets consist of the farm and farm-related materials, and these assets have been maintained primarily through the enormous contributions of the husband. We see no abuse of discretion here in awarding the wife 40 percent of the value of the marital assets rather than her claimed 50 percent.

The thrust of the wife's next contention is that the court erred in awarding the husband all the income-producing property and awarding her all the incoming-consuming property. The court sought to preserve ownership of the farm in the family and awarded it to the husband primarily because he was most likely to continue its operation. The wife expressed no interest whatsoever in continuing the farming operations. Her complaint is that the property awarded her will not produce income equal to that of the farm and that the property awarded her is primarily income consuming. This same argument was presented by the wife when her counsel moved the court to amend its findings and conclusions. In response to this argument, the trial court found that the 10 acre tract with its barn sheds, graineries and farmhouse gave the wife property which could generate income by either its sale or rental. Testimony of the wife's expert at trial confirms this determination.

At trial, a real estate broker testifying for the wife estimated the value of the farm buildings and the land upon which they sit to be $87,000. He described the property as a unique piece of land on which some people might place a value even higher

-8-

than his estimate. He stated that the property's location next to the highway would probably make it a quick sale. This testimony suggests that the wife by selling the property could in fact produce a sizeable amount of income for her savings or reinvestment. The trial court also determined that the property had rental value. We find no abuse of discretion in these determinations.

The next issue raised by the wife is that the court erred in denying her maintenance. She argues that her present income is such that she cannot earn enough to provide herself a decent standard of living and that the trial court's distribution of property has cut off her opportunities for additional income. We determine, however, that the trial court did not abuse its discretion in not awarding maintenance to the wife.

The wife left the farm and lived apart from the husband for two years prior to their divorce. She testified at trial that she had not received any money from the husband during this period and that she is able to support herself. Since the parties' separation, she has rented an apartment for approximately $140 per month. The trial court distributed the family home to the wife. By living in the home she can reduce her expenses by $140 per month, or as discussed above, the wife could produce a significant amount of income by selling or renting the property. Moreover, in addition to the initial $13,000 to be paid the wife, the husband must pay the balance of the $120,000 in cash in annual installments of $6,000 each. We cannot conclude, therefore, that the trial court abused its discretion in not awarding maintenance to the wife.

We emphasize that in reaching our decision here, we have considered the impact of Hisquierdo, supra, in that the wife will

-9-

no longer be getting 40 percent of the husband's railroad retirement benefits when they mature. In the wife's proposed findings of fact, she requested the trial court to award maintenance to her in lieu of her claimed share in the husband's railroad pension. Instead, the trial court's amended decree awarded her a 40 percent share of the husband's pension as a property interest, but no maintenance.

By concluding that the wife is foreclosed from receiving any portion of her husband's railroad retirement benefits as an interest in property, her monthly income will be reduced by $220 per month from the date she would first have been entitled to receive a share of the pension. But the trial court's order denying maintenance to the wife should still be affirmed. She has supported herself without aid from the husband for over two years, and with the annual payments to be made to her by the husband, together with the property she has received (which she can either sell or rent for additional income), she has adequate means to support herself. We note in this regard that although the husband's income is larger than that of the wife, it is significantly reduced by a mortgage on the farmland, by debts connected with the farm machinery, and by payments to the wife required by the decree.

Ultimately, without regard to the railroad pension which must be considered the separate property of the husband under Hisquierdo, supra, the trial court awarded 40 percent of the marital assets to the wife and 60 percent to the husband. It found that she was not entitled to maintenance because she was employed and had been supporting herself for at least two years prior to the divorce, and because the cash awarded to the wife by the way of annual installment payments together with other income-producing property awarded to the wife, eliminated the need for maintenance. The trial court did not abuse its discretion.

-10-

The wife's final contention is that she is entitled to attorney fees for the divorce proceeding and this appeal. A party requesting an award of attorney fees must make a showing of necessity. See, Brown v. Brown (1978), ____ Mont. ____, 587 P.2d 361, 35 St.Rep. 1733; Whitman v. Whitman (1974), 164 Mont. 124, 519 P.2d 966. The trial court's award or denial of attorney fees will not be reversed when there is substantial evidence to support its findings. Allen v. Allen (1978), ____ Mont. ____, 575 P.2d 74, 35 St.Rep. 246. Here the wife was employed and testified that she had sufficient income to support herself. The wife did not demonstrate a necessity as required before she is entitled to attorney fees. Upon these facts, we find no abuse of discretion. The wife is clearly able to pay her own attorney fees.

The decree of the District Court is affirmed except insofar as it awards the wife a share of the husband's railroad retirement pension. This cause is remanded to the District Court for amendment of judgment in accordance with this opinion.

---------------------------------------------
                            Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
         Justices

-11-