411 S.E.2d 256

**Wanda June McGRAW, Appellant,**

v.

**William Raymond McGRAW, Appellee.**

**No. 19758.**

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 1, 1991.

Decided Nov. 1, 1991.

**114**

James M. Cagle, Charleston, for appellant.

Susan H. Hewman, Lewisburg, for appellee.

NEELY, Justice.

Wanda June McGraw appeals certain aspects of the final order of the Circuit Court of Summers County that granted Mrs. McGraw and her former husband, William Raymond McGraw, a divorce on the grounds of irreconcilable differences. On appeal Mrs. McGraw contends that the circuit court failed to include as marital property certain of Mr. McGraw's railroad retirement benefits, failed to value properly Mr. McGraw's early retirement and "buyout" benefits and certain stock, and that the court erred in his award of alimony. Because the evidence does not substantiate Mrs. McGraw's assignments of error, we affirm the decision of the circuit court.

In 1989, after a thirty-four year marriage, Mr. and Mrs. McGraw were divorced on the grounds of irreconcilable differences. In 1986 Mrs. McGraw sought a divorce claiming that Mr. McGraw's alcoholism contributed to the break down of their marriage and, in February 1987, the parties separated. In 1986, Mr. McGraw accepted a buy-out of his railroad seniority rights, valued at approximately $50,000 and paid at $1804 per month until he became eligible for retirement. In addition to the buy-out benefits, Mr. McGraw had railroad retirement benefits consisting of a basic annuity, which is comparable to the benefits available under Social Security retirement (Tier I benefits, having a value of $97,922), and a supplemental annuity (Tier II benefits, having a value of $55,350).

Although Mr. McGraw had retired, Mrs. McGraw continued to work as a hairdresser and had recently obtained her real estate license. In addition, during the marriage the parties had acquired some real estate, 1559 shares of CSX stock and other assets.

The case was heard by a family law master who excluded from marital property Mr. McGraw's Tier I retirement benefits but included as marital property 87.4 percent of Mr. McGraw's Tier II retirement benefits. The family law master excluded from marital property Mr. McGraw's buyout benefits, evaluated the CSX stock at $30 per share and refused to grant Mrs. McGraw alimony. The circuit court overruled the family law master in part, and held that Mr. McGraw's buy-out benefits were marital property and that Mrs. McGraw was entitled to alimony. The circuit court then adopted the other recommendations of the family law master.

Mrs. McGraw appeals to this Court assigning the following errors: (1) The circuit court should have classified Mr. McGraw's Tier I railroad retirement benefits as marital property; (2) The circuit court should have awarded Mrs. McGraw part of Mr. McGraw's buy-out benefits; (3) The circuit court should have reevaluated the CSX stock, which had been awarded to Mr. McGraw, because the stock had a $5 per share increase in value by the time of the final divorce order; and (4) The circuit court should have awarded more alimony and not have terminated the alimony at age 62. Because the circuit court did not err in these matters, we affirm the decision of the circuit court.

I

Mrs. McGraw's allegation that Mr. McGraw's Tier I railroad retirement is marital property is without merit. We note that section 101 of the Railroad Retirement Act of 1974, 45 U.S.C. § 231m and an

amendment thereto under the Railroad Retirement Solvency Act of 1983, Pub.L. No. 98–76, § 419(a), 97 Stat. 438, precludes considering Mr. McGraw's Tier I railroad retirement benefits as marital property.

■ Under the railroad retirement system, benefits are calculated based on several statutory components. *See* 45 U.S.C. § 231b. The basic component (Tier I benefits) is described in § 231b(a), and is designed to provide benefits equivalent to the "old age insurance benefit or disability insurance benefit" that would have been received under the Social Security Act. *See* H.R.Rep. No. 30(I), 98th Cong., 1st Sess., *reprinted in* 1983 U.S.Code Cong. & Ad. News 729, 730–34. The statute, 42 U.S.C. § 231m, provides that "no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated." In *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), the United States Supreme Court held that § 231m prohibited the division of benefits payable under the Railroad Retirement Act by a state court in a divorce. *See LaRue v. LaRue*, 172 W.Va. 158, 304 S.E.2d 312, 331 (1983) (Neely, J. concurring); *Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex.1979); *Padezanin v. Padezanin*, 341 Pa.Super. 26, 491 A.2d 130 (1985); *Belt v. Belt*, 398 N.W.2d 737 (N.D.1987); *Larango v. Larango*, 93 Wash.2d 460, 610 P.2d 907, 908 (1980); *Kendall v. Kendall*, 106 Mich.App. 240, 307 N.W.2d 457, 458–59 (1981); *In re Marriage of Knudson*, 186 Mont. 8, 606 P.2d 130, 131 (1980); *Rommelfanger v. Rommelfanger*, 114 Wis.2d 175, 337 N.W.2d 851, 853 (Ct.App.1983); *Matter of Marriage of Swan*, 301 Or. 167, 720 P.2d 747 (1986). *But see In re Marriage of Roark*, 34 Wash.App. 252, 659 P.2d 1133, 1135 (1983) (allowing the railroad retirement benefits to be considered as an "economic circumstance" of the parties when apportioning community property in a divorce) *construed in, In re Marriage of Bishop*, 46 Wash.App. 198, 729 P.2d 647, 650 (1986).

■ In the Railroad Retirement Solvency Act of 1983, cited above, Congress amended § 231m. The amendment expressly permits characterization of the supplemental annuity (Tier II benefits) as "community property" subject to distribution upon a divorce.[1]

In the present case, the circuit court classified 87.4% (Mr. McGraw was married for 31 years of his 35.5 years of pension earning employment) of Mr. McGraw's Tier II benefits, valued at $55,350, as marital property and this portion was part of the distribution of marital property. Mr. McGraw's Tier I benefits, valued at $97,922, were excluded from distribution. The record contains Railroad Retirement Board form G–177c, which indicates that a divorced spouse is eligible for an annuity under the Railroad Retirement Act beginning at age 62, provided certain conditions have been met.

We find Mrs. McGraw's assignment of error concerning the exclusion from marital property of Mr. McGraw's Tier I railroad retirement benefits is without merit because federal law excludes Tier I benefits from consideration as divisible marital property.

## II

Next, Mrs. McGraw maintains that she did not receive an equal share of Mr. McGraw's "buy-out" benefits, valued at $50,000. Because Mr. McGraw's buy-out benefits consisted of a monthly payment of $1804, the family law master balanced the

---

1. Section 231m(b)(2) states:

The section shall not operate to prohibit the characterization or treatment of that portion of an annuity under this Act which is not computed under section 3(a), 4(a), or 4(f) of this Act [45 U.S.C.S. § 231b(a), 231c(a) or (f) ], or any portion of a supplemental annuity under this Act, as community property for the purposes of, or property subject to, distribution in accordance with a court decree of divorce, annulment, or legal separation or the terms of any court-approved property settlement incident to any such court decree. The Board shall make payments of such portions in accordance with any such characterization or treatment or any such decree or settlement.

incomes of the parties during the pendency of the divorce. In addition to her earnings, Mrs. McGraw was awarded $400 per month in temporary alimony and all of the rental income from the parties' real estate, estimated at $500 per month. During most of the time that Mr. McGraw received his buy-out benefits, his monthly income was $1400 ($1800 less the alimony payment of $400) and Mrs. McGraw's monthly income was about $1500 (earnings of $600, rental income of $500 and alimony of $400).[2] In addition, when Mr. McGraw began receiving his buy-out benefits in 1986, the parties were still living together.

■ Because of the income nature of Mr. McGraw's buy-out benefits, the circuit court concluded that the economic effect of the buy-out had been fully accounted for in the family law master's determination of income and the award of temporary alimony during pendency of the divorce. In Syllabus Point 1, *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990), we said:

> "A measure of discretion is accorded to a family law master in making value determinations after hearing expert testimony. However, the family law master is not free to reject competent expert testimony which has not been rebutted. This statement is analogous to the rule that '[w]hen the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is plainly wrong, such finding will be reversed and set aside by this Court upon appellate review.'" Syllabus Point 1, in part, *George v. Godby*, 174 W.Va. 313, 325 S.E.2d 102 (1984), quoting Syllabus Point 4, *Smith v. Godby*, 154 W.Va. 190, 174 S.E.2d 165 (1970).

Although the family law master incorrectly excluded Mr. McGraw's buy-out benefits from marital property, the circuit court correctly classified Mr. McGraw's buy-out benefits as marital property, but then also correctly considered the income nature of this asset and gave appropriate credit for cash payments to Mrs. McGraw that amounted to an equitable distribution of this asset. Because of Mr. McGraw's buy-out benefits, Mrs. McGraw received all the rental income and did not have to contribute to Mr. McGraw's support from her earnings. We find no abuse of discretion in the circuit court's consideration of the income nature of Mr. McGraw's buy-out benefits.

### III

■ Mrs. McGraw maintains that the circuit court should have reevaluated the CSX stock, which the family law master had awarded to Mr. McGraw, after the stock increased in value by $5 per share between the evaluation by the family law master and the final divorce order. The parties owned 1559 shares of CSX stock that was valued by the family law master at $30 per share, but by the time of the final divorce order, the CSX stock was worth an additional $7,800.

*W.Va.Code*, 48–2–32(d)(1) [1984], provides that the court shall "[d]etermine the net value of all marital property of the parties as *of the date of the commencement of the action* or as of such later date determined by the court *to be more appropriate for attaining an equitable result....* [Emphasis added.]" In *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413, 417 (1990), we said:

> Under W.Va.Code, 48–2–32(d)(1), the measure of value is the net value of the marital property, ordinarily as of the date of the commencement of the action. (Footnote omitted).

The circuit court adopted the family law master's property evaluations.[3] We have

---

**2.** Although the parties separated in February 1987, Mrs. McGraw was not awarded temporary alimony until June 1987.

**3.** After the final divorce order was filed, a building that was awarded to Mrs. McGraw burned down. According to the family law master's evaluation, the building had a value of $36,000. However, the insurance paid $60,400 for the building. If the issue of evaluation is remanded, Mr. McGraw urges that all evaluations be reconsidered and demands his equitable share of the building's increased value.

accorded a measure of discretion to the family law master in making value determinations. Syllabus Point 1, *Bettinger, supra.*

Because of the need for finality in the matter of evaluation, we find the refusal of the circuit court to reevaluate the parties' marital property was not an abuse of discretion and, therefore, find no merit in this assignment of error.

## IV

Finally, Mrs. McGraw contends that the amount of alimony is inadequate and the alimony should not stop when she reaches age 62. *W. Va. Code,* 48–2–16 [1984], lists sixteen factors a court should consider when determining whether alimony should be awarded in a given case. Mrs. McGraw maintains that the alimony is "rehabilitative" because of its limited duration and, given her age, inappropriate.[4] We noted that Mrs. McGraw earns $600 per month from her beauty shop and is a licensed real estate agent.

In Syllabus Point 3, *Molnar, supra* n. 5, we discussed three broad inquiries concerning rehabilitative alimony. However, unlike the dependent spouse in *Molnar,* Mrs. McGraw already has employment skills and is working. In addition the parties have relatively similar incomes because Mr. McGraw has retired. *See Wyant v. Wyant,* 184 W.Va. 434, 400 S.E.2d 869 (1990) (discussing rehabilitative alimony for a dependent spouse who functioned as a homemaker and as the primary caretaker of young children); *Bettinger, supra* 183 W.Va. at 542, 396 S.E.2d at 723 (discussing rehabilitative alimony for an older person).

In the present case, the circuit court awarded Mrs. McGraw alimony to bridge the gap between divorce and eligibility for retirement benefits at age 62. The alimony awarded to Mrs. McGraw is not to rehabili-

tate her but rather to assure her of income until her retirement benefits begin.

The record indicates that Mr. McGraw, who has reached age 62, has a retirement income of $1,100 per month, including $618 in Tier I benefits and $300 per month from rental property. Discounting the Tier I income (*See supra* section I), Mr. McGraw's monthly income is about $800 per month and Mrs. McGraw's income is about $600 per month.[5] However when the alimony award is considered, Mr. McGraw's income is $550 per month and Mrs. McGraw's income is $850 per month.

In Syllabus Point 8, *Wyant supra,* we said:

" 'Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.' Syllabus, *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977)." Syllabus, *Luff v. Luff,* 174 W.Va. 734, 329 S.E.2d 100 (1985).

In the present case the evidence shows that alimony was awarded, not to assure Mrs. McGraw's employment, but rather to assure Mrs. McGraw's income until she becomes eligible for retirement benefits. Therefore, we find that the circuit court did not abuse its discretion in determining alimony.

For the above stated reasons, we affirm the decision of the Circuit Court of Summers County.

Affirmed.

---

4. The concept of rehabilitative alimony was explained in Syllabus Point 1, *Molnar v. Molnar,* 173 W.Va. 200, 314 S.E.2d 73 (1984), as "an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained."

5. If the building had not burned down Mrs. McGraw would have also received rental income of about $250 per month.