James C. ELKINS, Appellant,

v.

Lena Faye ELKINS, Appellee.

No. 91–CA–000265–MR.

Court of Appeals of Kentucky.

June 4, 1993.

Lawrence R. Webster, Pikeville, for appellant.

Elizabeth Shaw, Richmond, for appellee.

Before JOHNSON, McDONALD and WILHOIT, JJ.

JOHNSON, Judge.

This is an appeal by the husband, James C. Elkins, from a Decree of Dissolution entered in Madison Circuit Court. James raises three issues on his appeal: (1) whether the trial court erred in refusing to enforce a post-nuptial agreement; (2) whether the trial court erred in assigning the interest in $1,200.00 in coins to James; and (3) whether the trial court erred in determining that Railroad Retirement disability benefits were marital property. We affirm the trial court as to issues 1 and 2; and reverse in part as to issue 3.

■ Appellee/wife, Lena Faye Elkins, is correct in asserting that the issue of the enforceability of the post-nuptial agreement was not properly preserved for appellate review. James clearly brought the issue to the attention of the Domestic Relations Commissioner by addressing same in his Pre–Trial Memorandum. However, the Commissioner did not address the issue in his Report; James did not raise the issue in his Exceptions; the trial court did not address the issue in the Decree; and James did not file a motion for an amendment to the findings of fact pursuant to CR 52.04. The authenticity of the alleged agreement was contested by Lena. It is impossible for this court to give meaningful review to the issue in the absence of findings of fact. *Angel v. Angel*, Ky.App., 562 S.W.2d 661 (1978).

James' second issue concerns whether there was substantial evidence upon which the trial court could award against James' interest in the marital estate $1,200.00 in coins that Lena contends were removed from a safe deposit box by James. The finder of fact obviously chose to believe Lena as to this issue. Her testimony is sufficient evidence to support this finding; and accordingly, it cannot be said that this finding is clearly erroneous. CR 52.01

■ James' third issue, concerning whether the trial court erred in determining that the Railroad Retirement disability benefits were marital property, is one of first impression in our appellate courts. James received lump sum payments, in 1972 for $32,000 and in 1987 for $15,000, the proceeds of which he now seeks to have declared non-marital property. The 1987 payment was made under the Railroad Retirement Act of 1974 (RRA), 45 U.S.C.S. § 231a(a)(1)(v), and appears to have been in satisfaction of past due annuity payments. This is important because 45 U.S.C.S. § 231m(a) provides that such annuity payments shall not "be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever...." It has been held that this language prohibits the states from considering a spouse's prospective right to such benefits when dividing the marital estate. *See Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979); *McGraw v. McGraw*, 186 W.Va. 113, 411 S.E.2d 256 (1991);[1] *Belt v. Belt*, 398 N.W.2d 737 (N.D.1987); *Padezanin v. Padezanin*, 341 Pa.Super. 26, 491 A.2d 130 (1985).

---

1. See *McGraw, supra,* for a listing of cases from numerous states holding likewise.

That is, under the Supremacy Clause of the United States Constitution, the federal statute pre-empts any contrary state law.

Congress has fixed an amount thought appropriate to support an employee's old age and to encourage the employee to retire. Any automatic diminution of that amount frustrates the congressional objective. By reducing benefits received, it discourages the divorced employee from retiring. And it provides the employee with an incentive to keep working, because the former spouse has no community property claim to salary earned after the marital community is dissolved. Section 231m shields the distribution of benefits from state decisions that would actually reverse the flow of incentives Congress originally intended.

*Hisquierdo*, 439 U.S. at 585, 99 S.Ct. at 810.

In short, the states are not free to force a railroad worker to share his retirement benefits where Congress has mandated to the contrary.

■ In this case, the question is whether the annuity payments may be treated as marital property *after* receipt. We hold that where the annuity payments can be traced into identifiable assets those assets are non-marital. This result is consistent with the holding in *Hisquierdo, supra,* to the effect that RRA benefits are intended for the sole benefit of the railroad worker. *See Hisquierdo*, 439 U.S. at 583–587, 99 S.Ct. at 809–811. Although the Court in *Hisquierdo* was not faced with the precise question presented here, it has been held by at least one court that RRA disability benefits remain exempt from garnishment or attachment after payment. *Shrader v. Maultz*, 58 Ill.App.3d 484, 16 Ill.Dec. 44, 374 N.E.2d 819 (1978).

This seems consistent with Congress' apparent intent. After the Supreme Court's ruling in *Hisquierdo, supra,* Congress amended the statute so that in most cases a railroad worker's retirement benefits can be treated as marital property. However, disability benefits were specifically exempted from this change—the states are still prohibited from considering disability annuity payments in dividing the marital estate. *See* 45 U.S.C.S. 231m. The apparent intent is to make sure that disability benefits go *only* to the injured worker. This intent will be defeated if courts allow payments to be seized in whole or in part after payment.

■ As to the 1972 payment, however, we hold that the trial court did not err in treating any proceeds as marital property. It seems unlikely that the payment was made under the applicable (exempt from marital property status) provisions of the RRA. The record shows that the payment was not a disability annuity payment from the federal government, but was instead a lump-sum payment from the Norfolk and Western Railway Company in settlement of a personal injury claim against that company. But even if the money were exempt, James would still have to show that the trial court clearly erred in holding that James had not traced the 1972 payment into presently identifiable proceeds. James has not done this. Even if James' testimony were clear and uncontroverted, and it was neither, the court is not compelled to believe it.

Therefore, we reverse the trial court in part; for the reason that the proceeds of the 1987 payment in the amount of $15,000 are James' non-marital property and must be restored to him.

We affirm the trial court in part, reverse in part, and remand for further proceedings consistent with this Opinion.

All concur.