474 S.E.2d 579

**Thelma SHRADER, Petitioner Below, Appellant,**

v.

**Carl SHRADER, Respondent Below, Appellee.**

**No. 23161.**

Supreme Court of Appeals of West Virginia.

Submitted April 30, 1996.

Decided July 11, 1996.

---

Mary Ellen Griffith, Bell & Griffith, L.C., Princeton, for Appellant.

Sidney H. Bell, Welch, for Appellee.

PER CURIAM.

In this divorce proceeding, Thelma Shrader appeals that portion of a final order of the Circuit Court of McDowell County, which denied her a share of the pension of Carl Shrader, her former husband, denied her rehabilitative alimony and awarded Mr. Shrader a 1973 Dodge Dart automobile. On appeal, Ms. Shrader argues that the circuit

court should have adopted the recommendations of the family law master in these matters because Mr. Shrader's pension is marital property, she needs rehabilitative alimony to become employed and the 1973 automobile was given to her by Mr. Shrader as a present. After reviewing the record, we find the circuit court erred in these matters, and therefore, we reverse its decision and remand the case for further proceedings.

## I.

### FACTS AND BACKGROUND

After fourteen years of marriage, Ms. Shrader filed for a divorce in October 1990, on the grounds of irreconcilable differences and cruel and inhuman treatment. The parties have one child who was born in 1977. Ms. Shrader, who was sixteen years old at the time of her marriage, was primarily a homemaker, but after her son was in school, she earned her G.E.D. and worked part-time in a video store. Ms. Shrader is currently employed as a house cleaner and earns about $100 to $125 per month. Throughout the marriage, Mr. Shrader worked as a coal miner, with substantial overtime during various periods. During their marriage, the parties acquired various items including a 1973 Dodge Dart, which was modified for racing.

After obtaining a domestic violence protective order in magistrate court because of alleged physical and emotional abuse, Ms. Shrader filed for a divorce in October 1990. In December 1990, Ms. Shrader agreed to move out of the marital residence in exchange for Mr. Shrader's paying her for her interest in the house. The parties agreed that Mr. Shrader paid her $7,000. Ms. Shrader alleges that while the divorce was pending, Mr. Shrader failed to make the following additional agreed upon payments: (1) an additional $7,000, at a rate of $100 per month, for the remainder of her interest in the marital residence; (2) $500 per month in child support; (3) $300 per month in alimony; and, (4) her monthly car payment.

After Ms. Shrader and her son moved out of the martial residence, she and her son lived with relatives for about three and one half months. Thereafter, she began sharing a house with a friend, a male friend. The parties disagree about the relationship between Ms. Shrader and her housemate. Ms. Shrader has consistently maintained that her housemate is merely a friend, and Mr. Shrader alleges that there is romantic involvement. As a result of a temporary order entered on February 27, 1991, Mr. Shrader was required to pay $385.50 per month for child support. At a second hearing, by order entered on June 10, 1991, Mr. Shrader was ordered: (1) to maintain health insurance for his son and Ms. Shrader; (2) to pay medical bills for his son and Ms. Shrader; (3) to pay certain marital debts including Ms. Shrader's car payment and insurance; and (4) to disclose his income and assets. Because Mr. Shrader failed to disclose his income and assets, Ms. Shrader's motion to compel was granted, and in September 1991, Mr. Shrader provided income information but failed to disclose his liabilities and assets, including any participation in a union pension plan. Ms. Shrader alleges that although required by a temporary order, Mr. Shrader failed to make timely payments for child support and her car insurance.

After a hearing on August 26, 1993, the family law master issued a recommended decision on March 26, 1994. Mr. Shrader objected to portions of the recommended decision. After a hearing on June 9, 1994, the circuit court adopted the family law master's recommended decision with the following modifications: (1) the circuit court denied Ms. Shrader one half of Mr. Shrader's "unspecified" pension benefits; (2) the circuit court denied Ms. Shrader rehabilitative alimony of $400 per month for eight (8) years; and (3) the circuit court awarded the 1973 Dodge Dart to Mr. Shrader.

On appeal, Ms. Shrader contends that the circuit court erred in failing to adopt the recommendations of the family law master in these matters.

## II.

### STANDARD OF REVIEW

In this divorce proceeding, we are asked to review the findings and conclusions made by a circuit court, which deviated from

the recommendations of the family law master. We note that as part of the review of the family law master's recommendations, the circuit court held a hearing during which additional evidence was presented on two of the contested issues, namely the rehabilitative alimony and the 1973 Dodge Dart. In reviewing the findings and conclusions of the circuit court that were adopted after considering additional evidence, we apply our usual three-pronged standard of review that was stated in Syl. pt. 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996). "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" This is the same three-pronged standard of review stated in Syl. pt. 1 of *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995)(applied when a circuit court adopts the family law master's recommendations).

■ On the issue of Mr. Shrader's pension, we apply the standard of review stated in *Stephen L.H. v. Sherry L.H.,* 195 W.Va. 384, 465 S.E.2d 841 (1995) because the circuit court, without considering any additional evidence, rejected the family law master's recommendation. Syl. pt. 1 of *Stephen L.H. v. Sherry L.H.* states:

A circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard.

*In accord* Syl. pt. 1, *State ex rel. W.Va. Dept. of Health and Human Resources v. Carl Lee H.,* 196 W.Va. 369, 472 S.E.2d 815 (1996); Syl. pt. 1, *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996).

Mindful of our standards of review, we examine the record in this case to determine: first, if the circuit court should have adopted the family law master's recommendation concerning Mr. Shrader's pension; second, if the circuit court's denial of alimony, based on an allegation of adulterous conduct was clearly erroneous; and third, if the circuit court's award of the 1973 Dodge Dart to Mr. Shrader was clearly erroneous.

### III.

### DISCUSSION

#### A.

#### *Pension*

■ Ms. Shrader contends that the circuit court should have awarded her an appropriate portion of Mr. Shrader's pension. The record is unclear about whether Mr. Shrader does, in fact, have a pension. Mr. Shrader did not disclose any information about a pension even after a motion to compel disclosure was granted. In hearings before the family law master, Mr. Shrader said he thought he would be eligible for a pension after 20 years but did not currently have any pension rights.[1] Ms. Shrader testified that she believed that Mr. Shrader was entitled to a pension from his union.[2] The family law

---

1. Mr. Shrader gave the following testimony:

Q (Mary Ellen Griffith, Esq., Ms. Shrader's lawyer) And pursuant to that, you would be eligible for a pension from the United Workers of America?
A (Mr. Shrader) Providing I get a full time in, yes, 20 years.
Q But you didn't disclose any pension rights that you have?
A To the best of my knowledge, I haven't any. In my understanding, 20 years and then you're eligible for pension.
Q If you are eligible for any pension rights do you have any objection to dividing that share that was accrued during your marriage with your wife?
A Yes.

Q You object to that?
A Uh-huh.

2. Ms. Shrader gave the following testimony:

Q (Ms. Griffith) ... [I]s it your understanding that your husband has a pension through his employment?
A (Ms. Shrader) Yes, he does.
Q During the time that he has worked, has that employment been as a union coal miner?
A Yes, it has.
Q And is it your belief that he is entitled to a pension from the union?
A Yes, it is.
Q That has not been disclosed by Mr. Shrader, but you believe that such a pension exists?

master recommended awarding Ms. Shrader "one-half of all [Mr. Shrader's] pension and/or retirement benefits accrued during the marriage and transfer thereof to be made by a Qualified Domestic Relations Order" [sic] to be prepared by plaintiff's counsel."

The circuit court, without considering any additional evidence concerning Mr. Shrader's alleged pension, refused to adopt the family law master's recommendation because of a lack of information about Mr. Shrader's pension.[3]

■ In Syl. pt. 4 of *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987), we held that pensions acquired during a marriage are marital property subject to equitable distribution.

> Although *W. Va. Code*, 48–2–1 [1984] and *W. Va. Code*, 48–2–32 [1984] did not specifically mention pension plans as marital property available for equitable distribution, these two *Code* sections were broad enough to encompass pension plans.

In Syl. pt. 5 of *Cross v. Cross*, we set forth some guidelines to assist in the division of pension rights; one suggestion was "a court order requiring that the non-working spouse share in the benefits on a proportional basis when and if they [pension rights] mature."[4] In *Butcher v. Butcher*, 178 W.Va. 33, 40 n. 15, 357 S.E.2d 226, 234 n. 15 (1987), we recognized the "there can be equitable distri-

> A Yes, I do.
> Q And are you asking that one-half of any such pension rights that accrued during the marriage be awarded to you?
> A Yes, I am.
> Q And that they be divided by a qualified domestic relations order?
> A Yes, I am.

**3.** On the issue of Mr. Shrader's pension, the order of the circuit court, entered on April 26, 1995, stated:

> With respect to the award of unspecified pension benefits to plaintiff, the Law Master is clearly wrong and must be reversed. Instead of following the methodology of, for example, *McGraw v. McGraw*, 186 W.Va. 113, 411 S.E.2d 256 (1991) and *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987), the Law Master cited no evidence or methodology but rather based this award on speculation, there being no reliable evidence on point and there being no evidence of any vesting or valuation

bution made of nonvested pension benefits" and that valuation methods exist for nonvested pension benefits. These cases are consistent with this Court's long held position that pension rights are marital property and therefore, subject to equitable distribution.

In this case, the circuit court's order rewards Mr. Shrader's refusal to seek or provide information about his pension rights; whereas, the family law master's recommendation was sufficiently broad to encompass any pension rights that Mr. Shrader might possess. Because Ms. Shrader is entitled to an equitable share of any pension benefits Mr. Shrader acquired during their marriage, we find that the circuit court should have adopted the recommendation of the family law master and allowed the entry of a qualified domestic relations order to distribute Mr. Shrader's pension rights. The circuit court's order rewards a refusal to disclose assets and appellate courts have long been reluctant to reward such actions. *See* Syl. pt. 4, *State v. Johnson*, — W.Va. —, 476 S.E.2d 522 (1996); Syl. pt. 21, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966) (invited error is not grounds for reversal). Because the family law master did not abuse her discretion in requiring a qualified domestic relations order, we reverse the circuit court's order and adopt the family law master's recommendation concerning Mr. Shrader's pension.

past, present or future relating to pension benefits.

**4.** Syl. pt. 5 of *Cross v. Cross* provides:

> When a court is required to divide vested pension rights that have not yet matured as an incident to the equitable distribution of marital property at divorce, the court should be guided in the selection of a method of division by the desirability of disentangling parties from one another as quickly and cleanly as possible. Consequently, a court should look to the following methods of dividing pension rights in this descending order of preference unless peculiar facts and circumstances dictate otherwise: (1) lump sum payment through a cash settlement or off-set from other available marital assets; (2) payment over time of the present value of the pension rights at the time of divorce to the non-working spouse; (3) a court order requiring that the non-working spouse share in the benefits on a proportional basis when and if they mature.

## B.

### *Rehabilitative Alimony*

■ Ms. Shrader maintains that the circuit court erred in refusing her request for rehabilitative alimony. Based on a finding that Ms. Shrader's relationship with her current male "roommate . . . was the main contributing factor in the breakup of this marriage," the circuit court found the family law master's recommendation of rehabilitative alimony of $400 per month for eight (8) years to enable Ms. Shrader to obtain a college degree in accounting was "clearly inequitable and unjust."

W.Va.Code 48–2–15(i)(1993) bars "the payment of alimony to a party determined to be at fault, when . . . such party is determined by the court . . . [t]o have committed adultery" and allows a court to "consider and compare the fault or misconduct . . . and the effect of such fault or misconduct" in determining whether to award alimony or how much to award.[5] Based on W.Va.Code 48–2–15(i)(1993), in Syl. pt. 2, *Rexroad v. Rexroad,* 186 W.Va. 696, 414 S.E.2d 457 (1992), we stated:

> W. Va. Code, 48–2–15(i) (1991), bars a person from alimony in only three instances: (1) where the party has committed adultery; (2) where, subsequent to the marriage, the party has been convicted of a felony, which conviction is final; and (3) where the party has actually abandoned or

deserted the other spouse for six months. In those other situations where fault is considered in awarding alimony under W. Va. Code, 48–2–15(i), the court or family law master shall consider and compare the fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship.

On the issue of fault, the circuit court took evidence and concluded that Ms. Shrader's denial of a relationship with her housemate was not creditable. In its order, the circuit court cited several post-separation acts as reasons for its conclusion. The only evidence that Ms. Shrader had a relationship with her housemate before her separation came from a partially overheard telephone call that Mr. Shrader "assume[d]" came from the future housemate.[6]

Recently, in *In the Interest of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996)(a parental rights termination case), after noting that a reviewing court should not set aside findings of facts unless they are "clearly erroneous," we explained when a finding should be set aside.

> A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not

---

**5.** W.Va.Code 48–2–15(i)(1993) provides:

> In determining whether alimony is to be awarded, or in determining the amount of alimony, if any, to be awarded under the provisions of this section, the court shall consider and compare the fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship. However, alimony shall not be awarded when both parties prove grounds for divorce and are denied a divorce, nor shall an award of alimony under the provisions of this section be ordered which directs the payment of alimony to a party determined to be at fault, when, as a grounds granting the divorce, such party is determined by the court:
> (1) To have committed adultery; or
> (2) To have been convicted for the commission of a crime which is a felony, subsequent to the marriage if such conviction has become final; or

> (3) To have actually abandoned or deserted his or her spouse for six months.

**6.** Mr. Shrader gave the following testimony concerning Ms. Shrader's alleged relationship:

> And then one night I heard her on the phone. And I got up and went to the hallway door, the bedroom door that led down to the hallway. And it was, like, 2:00, 3:00 in the morning and she was on the phone and she was—I could hear her laughing and giggling. Then when she knew I was present, well, she got very quiet.
> And we had three-way calling, and she had been, I assume, talking to Bobby Powell then. And she had a friend that was helping out in the relationship. And when I walked in and caught her on the phone, why, she pushed the button to back to the friend.
> And then after she left the home, I got phone calls saying that she was being seen with Bobby Powell, and give [sic] me directions how to get to the house where they were staying.

overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. pt. 1, in part, *In the Interest of Tiffany Marie S., supra.*

In this case, the circuit court was clearly erroneous in determining that Ms. Shrader's relationship with her male housemate was a contributing factor to the dissolution of the marriage. There is no evidence that Ms. Shrader had any relationship with her housemate until after Mr. Shrader's actions compelled Ms. Shrader to relinquish the marital residence. Even Mr. Shrader acknowledges that he lacks direct knowledge about whom Ms. Shrader spoke with on the telephone before the separation. Smoke, mirrors, suspicion and supposition are not sufficient evidence to support a factual finding. Neither is the *ad hoc ergo propter hoc* (after the fact) reasoning of the circuit court convincing. The circuit court erred in focusing on Ms. Shrader's post-separation living arrangements—arrangements necessitated by exigent circumstances; rather than focusing on what caused the dissolution of the marriage.

After reviewing the entire record, we have a definite and firm conviction that the circuit court was mistaken in its findings concerning the effect of Ms. Shrader's relationship with her housemate on the Shraders' marriage. The record is simply devoid of evidence of any relationship prior to separation.

The circuit court also discounted Ms. Shrader's statements about desiring to acquire an education because she did not pursue her goal while the divorce was pending. Ms. Shrader testified that she lacked the resources to pursue her educational goals. Ms. Shrader was earning about $100 to $125 per month as a house cleaner. Although she had some money from Mr. Shrader (Mr. Shrader paid Ms. Shrader $7,000 for her interest in the marital residence), Ms. Shrad-

er had living expenses for herself and her son. Mr. Shrader's child support checks were late, and then because of a strike, Mr. Shrader did not make the agreed to monthly payments for temporary alimony and other items, causing Ms. Shrader to apply for and receive food stamps. Ms. Shrader was not able to live in the marital residence and after several months, she was not able to live with her family. Given Ms. Shrader's financial circumstances, her decision to share a house with a friend, a male friend, is understandable. However, this housing arrangement began well after Mr. and Ms. Shrader separated and is insufficient evidence that Ms. Shrader's acts contributed to the dissolution of the marriage.

We find that the circuit court was clearly erroneous in finding fault that contributed to the dissolution of the marriage on the part of Ms. Shrader, and therefore, we find that Ms. Shrader is not barred from rehabilitative alimony. Because the evidence shows that rehabilitative alimony is appropriate under the factors outlined in *Molnar v. Molnar*, 173 W.Va. 200, 314 S.E.2d 73 (1984),[7] we reverse the circuit court and remand for adoption of the family law master's recommendation that Ms. Shrader be awarded rehabilitative alimony of $400 per month for eight (8) years.

## C.

### *The 1973 Dodge Dart*

The Shraders' final disagreement concerns ownership of a 1973 Dodge Dart. Ms. Shrader alleges that the car was given to her as a gift after she obtained her driver's license. Mr. Shrader maintains that throughout the marriage the car was his personal vehicle that he modified for racing. Both agree that although the car, which is "in mint condition," is intended for their teenage son, the car is not currently a suitable car for him because of the racing modification. Each party wants control of the 1973 Dodge Dart

---

7. Syl. pt. 3 of *Molnar v. Molnar, supra* states:
   There are three broad inquiries that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it should be granted; (2) if it is feasible, then the amount and duration of

rehabilitative alimony must be determined; and (3) consideration should be given to continuing jurisdiction to reconsider the amount and duration of rehabilitative alimony.
   *In accord* Syl. pt. 4, *Wyant v. Wyant*, 184 W.Va. 434, 400 S.E.2d 869 (1990).

**656**

until it is appropriate to allow their son to drive it. The car was titled solely in Mr. Shrader's name and he valued it at $1,000. Ms. Shrader, who drove the car shortly before the parties' separation, did not value the car.

The family law master awarded possession of the 1973 Dodge Dart to Ms. Shrader with "ownership of said vehicle ... to be given to the parties' son when he becomes responsible and skillful enough to operate it." The circuit court, after taking additional evidence and even obtaining pictures of the car for the record, awarded the "drag-racing/show car" to Mr. Shrader because "the car cannot be safely driven by a teenage [sic] on the street" and because "both parties treated and regarded the car as defendant's personal 'show' customized vehicle."

■ *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990), our cardinal case on the treatment of property in a divorce, gives a marked preference for characterizing the property of the parties as marital property, which is then subject to equitable distribution. W.Va.Code 48–2–1(e)(1)(1992) defines "marital property" as "[a]ll property and earnings acquired by either spouse during a marriage ... regardless of the form of ownership ... except that marital property shall not include separate property...." Syl. pt. 3 of *Whiting v. Whiting* states:

> W. Va. Code, 48–2–1(e)(1) (1986), defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties to a divorce action as marital property.

*In accord Graham v. Graham*, 195 W.Va. 343, 465 S.E.2d 614 (1995); *see Burnside v. Burnside*, 194 W.Va. at 267, 460 S.E.2d at 268.

In this case, to the extent that both the circuit court and the family law master failed to characterize the 1973 Dodge Dart as marital property, they are clearly erroneous. *See supra* sec. III. B. for a discussion of when a finding of fact is clearly erroneous. In Syl. pt. 1 of *Whiting v. Whiting*, we outlined the three-step equitable distribution process by stating:

Equitable distribution under W. Va. Code, 48–2–1, *et seq.*, is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W. Va. Code, 48–2–32.

Although we have reviewed the record and studied the car pictures, we decline to find, as a matter of law, that either party is entitled to the 1973 Dodge Dart. On remand, because the Dodge Dart is clearly marital property, the circuit court should proceed to valuate (step two) the car and then divide this property, or the value of it, applying the same three-step process used by the family law master for the other marital property. No solution is perfect; but, at least the equitable distribution process, which does not assure either party possession the car, does assure that both parties will end up with half the value. Judicial economy dictates a speedy resolution because decisions on this car have backfired several times. Maybe the delay has been long enough that the son can safely drive the car.

For the above stated reasons, the decision of the Circuit Court of McDowell County is reversed, and the case is remanded for proceedings consistent with this opinion.

Reversed and remanded.